(October 25, 1913.)

LAWRENCE F. CONNOLLY, JOHN J. CONNOLLY, WILLIAM CONNOLLY and ELLEN F. UDELL, Plaintiffs, v. THE PROBATE COURT IN AND FOR THE COUNTY OF KOOTENAI, and Hon. BERT A. REED, Judge of Said Court, Defendants.

[136 Pac. 205.]

PROBATE COURT—JURISDICTION OF—DESCENT AND DISTRIBUTION—NON-
RESIDENT ALIEN HEIR — FAILURE TO CLAIM PROPERTY—RESIDENT
HEIRS—RIGHT TO INHERIT PROPERTY—ESCHEAT—RIGHT OF SUC-
CESSION.

1. *Held,* that the probate court was without jurisdiction to sustain a motion or application for the setting aside of the decree of distribution in the Corbett estate matter, under the facts presented by the petition or motion.

2. *Held,* that it appears from the record that the probate court had jurisdiction to probate the estate of said Corbett and to enter a decree of distribution thereof, and that such decree not having been appealed from within the time provided by law, said decree

of distribution became conclusive as to the rights of all heirs and claimants to said estate.

3. In the probation and distribution of said estate, the notices required by statute having been given, said probate court acquired jurisdiction over all persons for the purpose of determining their rights to any portion of said estate; and every person who claimed any right or interest therein was required to appear and present his claim to said court for determination.

4. The action of the court in probating an estate is equally conclusive (subject to reversal or modification on appeal) upon all parties, whether they appear and present their claims or not, and as conclusive as if they had presented their claims and the court had disallowed them.

5. Probate proceedings in the settlement of estates are in the nature of proceedings *in rem*, and upon the statutory notices being given, all the world is charged with notice.

6. Under the provisions of sec. 4831, Rev. Codes, the decree of a probate court in probate matters is made appealable.

7. The probate court is not given jurisdiction under the laws of this state to set aside its decree of distribution on application made years after the entry of such decree.

8. Under the provisions of sec. 20, art. 5, of the state constitution, district courts are given original jurisdiction in all cases, both at law and in equity, and such appellate jurisdiction as may be conferred by law, and if the probate court errs in deciding probate matters, an appeal is provided to the district court to correct such errors.

9. After the expiration of the term at which a judgment is entered by the probate court, the court loses jurisdiction thereof and it becomes final, and the court no longer has the power to vacate, modify or set aside such judgment except under the provisions of sec. 4229, Rev. Codes.

10. Under the provisions of sec. 5715, Rev. Codes, resident aliens may take equally with citizens in all cases, by succession, but no nonresident alien can take by succession unless he appear and claim such succession within five years of the death of decedent to whom he claims succession.

11. Under the provisions of sec. 5716, Rev. Codes, when succession is not claimed as provided by said sec. 5715, the property of the deceased, except real estate, may be reduced to the possession of the state to be disposed of as provided by sec. 5716.

12. A nonresident alien cannot by failure to make application to succeed to an estate as provided by law deprive the resident heirs of the right to succeed thereto.

13.  Under the provisions of sec. 5700, Rev. Codes, succession is the coming in of another to take the property of one who dies without disposing of it by will.

14.  Sec. 5701, Rev. Codes, provides that property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate subject to the control of the probate court, and sec. 5702 provides the order of succession.

15.  *Held*, that the Connollys and Udell, being first cousins of the said deceased and resident citizens of the United States, are heirs of the deceased.

16.  When there are no heirs who claim the estate, then, and then only, does such property escheat to the state.

Original application to this court for a writ of prohibition directed to the probate judge of Kootenai county to restrain and prevent him from considering the petition of the state of Idaho filed in the matter of the estate of John Corbett, deceased.  Alternative writ issued, and after hearing the peremptory writ was granted and the court or judge prohibited from proceeding further in said matter.

C. W. Beale and C. L. Heitman, for Plaintiffs.

The probate court had jurisdiction of the probating of the estate with the power to determine who were the heirs of John Corbett, who were entitled to succeed to his estate, and what their respective interests therein were; having determined these matters and having entered its decree of distribution thereon, that became final at the end of the month of August, 1909, and conclusive as to the rights of all heirs and claimants to said estate.  (*Miller v. Mitcham*, 21 Ida. 741, 123 Pac. 941; *Wm. Hill Co. v. Lawler*, 116 Cal. 359, 68 Am. St. 27, 48 Pac. 323; *Goodrich v. Ferris*, 214 U. S. 71, 29 Sup. Ct. 580, 53 L. ed. 914; *Cunha v. Hughes*, 122 Cal. 111, 54 Pac. 535; *Williams v. Marx*, 124 Cal. 22, 56 Pac. 603; *Smith v. Vandepeer*, 3 Cal. App. 300, 85 Pac. 136; *Mulcahey v. Dow*, 131 Cal. 73, 63 Pac. 158; *State v. O'Day*, 41 Or. 495, 69 Pac. 542.)

Probate court proceedings are proceedings *in rem*, to which all the world are party and charged with notice.  (*Clark v. Rossier*, 10 Ida. 348, 359, 78 Pac. 358, 3 Ann. Cas. 231.)

The state does not come in by way of succession but only in the event of the absence of all who are entitled to come in by succession. (*In re Miner's Estate,* 143 Cal. 194, 76 Pac. 968.)

"If the immediate heirs are not able to succeed to the estate, as in the case of aliens at common law, yet if there be any persons legally qualified to do so, the estate will pass to them and not escheat." (16 Cyc. 550; *Jackson v. Jackson,* 7 Johns. (N. Y.) 214; *Orr v. Hodgson,* 4. Wheat. (U. S.) 453, 4 L. ed. 613; *Wunderle v. Wunderle,* 144 Ill. 40, 33 N. E. 195, 201, 19 L. R. A. 84.)

The allegations of the petition of the attorney general do not, under the decisions of this court, constitute fraud against anybody. (*Abrams v. White,* 11 Ida. 497, 83 Pac. 602; *Nelson v. Hudgel,* 23 Ida. 327, 130 Pac. 85.)

After the term has ended, all final judgments and decrees of the court pass beyond its control, unless steps be taken during that term, by motion or otherwise, to set aside, modify or correct them; and if errors exist, they can only be corrected by such proceeding by a writ of error or appeal as may be allowed in a court which by law can review the decision. (1 Black on Judgments, p. 306; *Brackett v. Banegas,* 99 Cal. 623, 34 Pac. 344; *Dean v. Superior Court,* 63 Cal. 473; *Estate of Hudson,* 63 Cal. 454.)

"Where statutes authorize the courts to vacate or set aside judgments, on certain enumerated grounds, within a prescribed time from the rendition of the judgment, the power of the court over the judgment absolutely ceases upon the expiration of such time, and thereafter it has no discretion, or even jurisdiction, to grant relief by vacating or modifying the judgment." (23 Cyc. 902; *Bunnell & Eno etc. Co. v. Curtis,* 5 Ida. 652, 51 Pac. 767.)

In the absence of an affidavit and showing of merit or mistake, inadvertence, surprise or excusable neglect, the decree of distribution should not and could not be set aside. (*Holzeman & Co. v. Henneberry,* 11 Ida. 428, 83 Pac. 497; *Hall v. Whittier,* 20 Ida. 120, 116 Pac. 1031.)

J. H. Peterson, Attorney General, R. L. Black, Assistant
to Attorney General, Whitla & Nelson and Elder & Elder, for
Defendant.

The inherent power of the court to set aside a judgment
obtained through fraud, deception or collusion may be exer-
cised after the expiration of the term, and the statute regu-
lating the time within which application to vacate judgments
must be made does not cover the case of fraudulent judg-
ments. (23 Cyc. 907, 917; *Furman v. Furman,* 153 N. Y.
309, 60 Am. St. 629, 47 N. E. 577; *Sullivan v. Andoe,* 6 Fed.
641, 4 Hughes, 290; *In re O'Neill's Estate,* 90 Wis. 480, 63
N. W. 1042.)

Beyond the methods provided by statute, courts possess
inherent powers, as has been said, to an almost unlimited ex-
tent to redress wrongs by modifying or setting aside judg-
ments obtained by fraud or mistake. (Freeman on Judg-
ments, secs. 99, 334; *Morrill v. Morrill,* 20 Or. 96, 23 Am. St.
101, 25 Pac. 362, 11 L. R. A. 155; 2 Pomeroy's Eq. Jur., sec.
919.)

The petition for distribution must place before the probate
court sufficient jurisdictional facts upon which that court can
make a valid order. There was never such a petition filed in
this case showing that the Connollys were the sole and sur-
viving heirs of John Corbett, deceased, and the pretended
order of distribution does not make such finding.

The principles of equity and justice demand that some court
must have jurisdiction of such matter, and if it were not
statutory and constitutional in this state for a probate court
to possess such power, then the broad and inherent power of
every court of record at common law would give the probate
court of Kootenai county power to review these proceedings.
(*Foreman v. Carter,* 9 Kan. 674; *Hanson v. Walcott,* 19 Kan.
207; *United States v. Walker,* 109 U. S. 258, 3 Sup. Ct. 277,
27 L. ed. 927; *Thomas v. American etc. Co.,* 47 Fed. 550,
12 L. R. A. 681; *Ladd v. Stevenson,* 112 N. Y. 325, 8 Am. St.
748, 19 N. E. 842; *Yorke v. Yorke,* 3 N. D. 343, 55 N. W. 1095;
*Gilbreadth v. Teufel,* 15 N. D. 152, 107 N. W. 49; *Shumake v.
Shumake,* 17 Ida. 649, 107 Pac. 42; *Kern v. Morgan,* 11 Ida.

572, 83 Pac. 954; *Freeman v. Wood,* 11 N. D. 1, 88 N. W. 721; *People ex rel. Hart v. District Court,* 33 Colo. 405, 80 Pac. 1065; *Seamster v. Blackstock,* 83 Va. 232, 5 Am. St. 262, 2 S. E. 36.)

When a decedent dies leaving a nonresident alien heir and that heir does not appear and claim the property within the period of five years, said property escheats to the state without inquest in the nature of office-found and title thereby vests in the state. (*State v. Stevenson,* 6 Ida. 367, 55 Pac. 886; *In re Pendergast's Estate,* 143 Cal. 135, 76 Pac. 962; *Lyons v. State,* 67 Cal. 380, 7 Pac. 763.) The state could not appear in the probate court within the five-year period. (*State v. Miller,* 149 Cal. 208, 85 Pac. 609; *In re McClellan's Estate* (S. D.), 141 N. W. 965; *Sands v. Lynham,* 27 Gratt. (Va.) 291, 21 Am. Rep. 348.) Under a similar statute the supreme court of California held that an action by the state to escheat the property was premature if commenced within five years after the death of the intestate. (*State v. Smith,* 70 Cal. 152, 12 Pac. 121.)

SULLIVAN, J.—This is an original application to this court for a writ of prohibition directed to the probate judge of Kootenai county to restrain and prevent him from considering the petition of the state of Idaho filed in the matter of the estate of John Corbett, deceased, wherein it is claimed that the estate of said Corbett is of the value of $75,000 and was wrongfully and fraudulently appropriated by Lawrence F., John J. and William Connolly and Ellen F. Udell, first cousins of said deceased. Said estate was administered on and distributed under and by virtue of the orders and decree of said probate court. Upon application to this court, the alternative writ was issued and the probate judge made his return, and the case was thereafter presented to this court upon oral arguments and typewritten briefs.

The facts of the case are substantially as follows:

John Corbett, deceased, was a resident of Kootenai county, leaving an estate in said county worth at least $20,000; thereafter, on or about the 20th day of February, 1907, Lawrence

F. Connolly, upon application, was appointed administrator of said estate by the probate court of said county, and letters of administration were duly issued to him. At the time said Connolly was appointed administrator as aforesaid he was a citizen of the United States and a resident of Kootenai county and he is a brother of the other two Connollys and of Ellen F. Udell. Appraisers were duly appointed by said court, who filed their inventory and appraisement of said estate. Thereafter, on the 23d day of August, 1909, said administrator filed his final account in said court, which final account was approved and settled and a decree of distribution was made by said court and recorded in the records of said court. No appeal was ever taken from said order settling said final account or said decree of distribution.

It appears that one Bridget Madden, a nonresident foreigner living at Galway, Ireland, was a half-sister of said deceased but did not appear in said probate court in the matter of the settlement of said estate and did not claim in said court any part of said estate prior to the 28th day of February, 1912, more than five years after the death of said deceased, and more than two years and six months after the date and entry of said decree of distribution. On the 28th of February, 1912, Bridget Madden filed in said probate court a certain petition, whereby she sought to have all of the probate proceedings theretofore had in said matter set aside and annulled. Thereafter, on March 14, 1912, said Lawrence F. and John J. Connolly filed in the probate court in the matter of said estate their notice of motion and motion to quash and set aside the service of said petition of Bridget Madden and asked to have the same dismissed. Thereafter and upon the hearing of said motion, said probate court on March 23d, 1912, entered a judgment therein sustaining said motion of the applicants to dismiss the petition. No application was made in said court for Bridget Madden, or by anyone on her behalf, to amend said petition at any time prior to the signing and entering of judgment or at any time prior to the 6th day of April, 1912. On said 6th day of April, Bridget Madden filed in said court her motion to set aside

and vacate the judgment dismissing her petition and sought to file an amended petition. No affidavit or showing of merit or affidavit or showing of any mistake, inadvertence, surprise or excusable neglect accompanied or was filed with said motion or was presented to the court in support of the application. Thereafter said probate court on the 18th day of April, 1912, made an order granting said motion, vacating and setting aside the judgment, dismissing said petition and granting leave for Bridget Madden to file an amended petition in the matter of said estate. Thereupon Lawrence F. Connolly and John J. Connolly applied to this court for a writ of prohibition, to which application William Connolly and Ellen Udell became parties, and after a hearing upon said application the same was granted and a writ of prohibition issued by this court on May 23, 1912, stopping such proceeding. (See *Connolly v. Reed,* 22 Ida. 29, 125 Pac. 213.)

On August 13, 1912, the said probate court made an order and decree in said matter finally discharging and releasing said Lawrence F. Connolly as administrator of said estate, and releasing and discharging from all liability his sureties as such administrator. On May 3, 1913, the state of Idaho, on the relation of the attorney general of the state, filed in said probate court in said matter of the estate of Corbett, deceased, a petition setting forth certain facts concerning the death of said deceased, that he owned certain stock in the Empire Mill Co. worth $60,000, and also possessed at the time of his death certain other property, and that said Bridget Madden was the half-sister of said deceased and that she was a nonresident foreigner, and that she was next of kin and heir at law of said deceased, and had failed for a period of five years after the death of said deceased to claim his said property by right of succession, and alleged that said property had now become by virtue of the law of this state, and especially of sec. 5715, Rev. Codes, of the state, escheated to the state of Idaho and had become the property of the state, and prayed that all proceedings in said probate matter wherein Lawrence F. Connolly was administrator be canceled and held for naught, and that all proceedings taken and done by said probate court in the distribution of said property by the said

probate court be canceled and held void, and that the said Connollys and Udell be required to turn all of said property over to the state of Idaho, and that on a final hearing in the matter an order be made holding that said Bridget Madden is the sole surviving heir of John Corbett, deceased, and that all of the property belonging to said estate be decreed to the state of Idaho for the use and benefit of said Bridget Madden, provided she make application therefor within five years after such deposit is made with the state treasurer.

It appears that Bridget Madden by her attorneys brought a proceeding in the district court of the eighth judicial district and the prayer of her petition in that matter is as follows:

"Wherefore, the Petitioner prays for an order of this court, directing the Attorney General to reduce the property of said estate to his or the possession of the state or to direct the same to be sold and the sum of the proceeds thereof to be deposited in the State Treasury for the benefit of such non-resident foreigner or her legal representatives to be paid to her, whenever, within five years after such deposit proof, to the satisfaction of the State Auditor and Treasurer, is produced showing that she is entitled to succeed thereto."

After the hearing of said matter, the court made the following order:

"Wherefore, The Court having considered said information and being fully advised, hereby directs Joseph H. Peterson, Attorney General of the State of Idaho, to reduce the property of said estate to his or the possession of the State of Idaho, or to cause the same to be sold, and the same or the proceeds thereof to be deposited in the State Treasury for the benefit of such non-resident foreigner, or her legal representative, to be paid to her, whenever, within five years after such deposit proof, to the satisfaction of the State Auditor or Treasurer, is produced that she is entitled to succeed thereto.

"Dated this 8th day of April, A. D. 1913.

"R. N. DUNN,

"Judge of the Eighth Judicial District of the State of Idaho, in and for the county of Kootenai."

It thus appears that the state is prosecuting this matter on the relation of the attorney general for the benefit of Bridget Madden at the expense of the taxpayers of the state, and not for the purpose of having said estate, or the proceeds thereof, turned in to the state treasury for the benefit of the public schools of the state, for which purpose the law provides such funds shall be used.

With the exception of certain formal allegations to the effect that the property of the Corbett estate had escheated to the state of Idaho and that this proceeding was commenced in the probate court by the attorney general in pursuance of said order of the judge of the district court of the eighth judicial district, which order of the district court, or judge, was made upon a proceeding instituted by Bridget Madden, there is nothing different set forth in the petition upon which the probate court and the defendant judge assumed to exercise jurisdiction than was set forth in the petition and amended petition of Bridget Madden, and this court in the case of *Connolly v. Reed, Judge,* 22 Ida. 29, 125 Pac. 213, specifically held that the allegations of such petition and the amended petition did not give the probate court or the judge thereof jurisdiction of said matter. It was there held that Bridget Madden having failed to appear and claim her right to succession within the five year period granted by the statute bars her right and claim, and that the probate court has no jurisdiction to grant her any relief. It was also there held that an allegation by a nonresident alien who seeks to establish her right to the estate of a decedent within this state, to the effect that an heir by fraudulent misrepresentation procured the distribution of the Corbett estate to himself and others, is not a sufficient allegation to show any wrong or injury to the alien claimant who failed and neglected to appear and claim the right of succession within the five-year period granted to such claimants, where it is not alleged and does not appear that the fraud had anything to do with, or resulted in preventing or depriving the nonresident alien claimant from setting up or asserting her claim to the property within the statutory time.

Said probate court having had jurisdiction of the probating of said estate with the power to determine who were the heirs of said Corbett, deceased, and who were entitled to succeed to his estate, and what their respective interests were, and having determined these matters, and having entered its decree of distribution therein, and the decree not having been appealed from within the time provided by law for an appeal, the decree becomes conclusive as to the rights of all heirs and claimants to said estate.

In *Miller v. Mitcham,* 21 Ida. 741, 123 Pac. 941, this court, after citing certain decisions sustaining that proposition, said:

"The foregoing authorities clearly and fully establish the proposition that the probate courts have exclusive, original jurisdiction in the settlement of estates of deceased persons, and it is within the jurisdiction of those courts to determine who are the heirs of a deceased person and who is entitled to succeed to the estate and their respective shares and interests therein. The decrees of probate courts are conclusive in such matters."

Since the decrees of probate courts are conclusive in such matters, unless reversed on appeal, the state of Idaho, on the relation of its attorney general, cannot have such decree set aside in the interest of a foreign and nonresident heir. As fully supporting this rule, see *William Hill Co. v. Lawler,* 116 Cal. 359, 68 Am. St. 27, 48 Pac. 323. The supreme court of California in that case, after stating that the proceeding for the distribution of an estate is in the nature of a proceeding *in rem,* which is in the hands of an administrator or executor for distribution, says:

"By giving the notice directed by the statute, the entire world is called before the court, and the court acquires jurisdiction over all persons for the purpose of determining their rights to any portion of the estate; and every person who may assert any right or interest therein is required to present his claim to the court for its determination. Whether he appear and present his claim or fail to appear, the action of the court is equally conclusive upon him, 'subject only to be reversed, set aside or modified on appeal.' The decree is as

binding upon him if he fail to appear and present his claim as if his claim after presentation had been disallowed by the court."

In *Goodrich v. Ferris,* 214 U. S. 71, 29 Sup. Ct. 580, 53 L. ed. 914, in which case the court approved the decision of the supreme court of California in the last cited case, the court says:

"It is elementary that probate proceeding by which jurisdiction of a probate court is asserted over the estate of a decedent for the purpose of administering the same is in the nature of a proceeding *in rem,* and is therefore one as to which all the world is charged with notice."

The same doctrine is affirmed in *Cunha v. Hughes,* 122 Cal. 111, 54 Pac. 535; *Williams v. Marx,* 124 Cal. 22, 56 Pac. 603; *Mulcahey v. Dow,* 131 Cal. 73, 63 Pac. 158; *State v. O'Day,* 41 Or. 495, 69 Pac. 542. In *Clark v. Rossier,* 10 Ida. 349, 78 Pac. 358, 3 Ann. Cas. 231, this court held to the same doctrine.

There is no question but that the proper notices were given in the administration of said estate and that all the world was notified of the proceedings in said matter, and that Bridget Madden made no appearance in said matter whatever, and did not bring these proceedings until more than two years after the decree of distribution had been made and entered by said probate court.

It is contended by counsel for defendant that under the allegations of the petition of the state of Idaho, fraud and fraudulent proceedings were charged against Connolly in procuring said order and decree of distribution to be entered by the probate court, and that when said fraudulent proceedings were called to the attention of the probate court, it was the absolute duty of that court to review the matter, and if it concluded that said judgment was fraudulently obtained, to set it aside.

The allegations of the attorney general in the petition of the state in regard to the fraud practiced by the Connollys are quite similar to the allegations of fraud set up in the petition which the court had under consideration in the case of *Connolly v. Reed, supra,* and the allegations in that petition

and the amended petition in that case this court held did not constitute fraud, and we do not think the allegations of the petitions of the attorney general charge fraud on the part of the Connollys, since it nowhere appears that through fraud or otherwise the defendants, the Connollys, kept Bridget Madden from appearing and asserting her rights, as it is not alleged that they made any misrepresentations or deceived her as to the facts of the case.

In the case of *Donovan v. Miller*, 12 Ida. 600, 88 Pac. 82, 9 L. R. A., N. S., 524, 10 Ann. Cas. 444, the court held that the remedy of appellants in that matter was in the probate court either by appeal or otherwise from its order or judgment. The judgment of the probate court in probate matters is made appealable by the provisions of sec. 4831, Rev. Codes. The probate court is not given jurisdiction, under the laws of this state, to set aside the decree of distribution entered upon a full hearing of which the entire world had legal notice. That proposition was fully considered in *Donovan v. Miller*, *supra*. While the probate court, under the provisions of sec. 21, art. 5, of the constitution, is made a court of record and is given original jurisdiction in all matters of probate, settlement of estates of deceased persons and the appointment of guardians, its orders and judgments in regard to those matters cannot be attacked collaterally, but may be corrected on appeal. The constitution does not make probate courts courts of equity in which equitable relief may be granted long after the time for appeal has passed.

The district courts of this state, under the provisions of sec. 20, art. 5, of the constitution, have original jurisdiction in all cases both at law and in equity, and such appellate jurisdiction as may be conferred by law, and if a probate court makes a mistake in passing upon probate matters, an appeal is provided to the district court to correct such mistake; and if mistakes are not so corrected, that ends the jurisdiction of the probate court in such matters. If through fraud or perjury an heir has been deprived of property without any laches or fault on his part, he has his remedy in a court of equity; but the probate court that passed upon such matter and settled and de-

termined the same as provided by law has no equitable or other jurisdiction to open the matter after the time for appeal has passed. There must be an end to the settlement and distribution of estates of decedents,—an end to such litigation.

That part of sec. 5664, Rev. Codes, which refers to the conduct of proceedings in the probate court, is as follows: "Except as otherwise provided in this title, the provisions of part 2 are applicable to and constitute the rules of practice in the proceedings mentioned in this title." Referring to part 2 of the code, we find that sec. 4229 is included therein, the provisions of which extend to the right to move against a judgment for a period of six months after the adjournment of court at which it was entered; and conceding for the purposes of this case that said provisions apply to a probate court, there is no provision that would authorize said court to entertain a motion to set aside said decree after the expiration of the August, 1909, term of said court, that being the term of court at which said decree was entered, and in that view of the matter the petition in this case was presented much too late. Sec. 3842, Rev. Codes, provides that terms of probate courts must be held on the fourth Monday of each month, which section was in force at the time of the settlement of the Corbett estate, but has since been amended. (See Laws 1911, p. 340.)

Mr. Black in his work on Judgments, vol. 1, sec. 306, says: "It was the rule of the common law,—and it is still adhered to with more or less consistency in most of the states,—that after the expiration of the term the court loses control of its judgments rendered during that term; they become final, and the court has no longer the power to vacate or modify them or to set them aside."

And the author quotes from the decision of the supreme court of the United States, *Bronson v. Schulten,* 104 U. S. 410, 26 L. ed. 797, as follows: "But it is a rule equally well established, that after the term has ended, all final judgments and decrees of the court pass beyond its control, unless steps be taken during that term, by motion or otherwise, to set aside, modify or correct them; and if errors exist, they can only be corrected by such proceeding by a writ of error or appeal

as may be allowed in a court which, by law, can review the decision." (*Estate of Hudson,* 63 Cal. 454.)

In 23 Cyc. 902, the rule is stated as follows: "As a general rule, in the absence of statutory provisions to the contrary, no court possesses authority to vacate or set aside its final judgment after the expiration of the term."

Numerous authorities hold that the power of the court over its judgments absolutely ceases upon the expiration of the time authorized by statute to make application to vacate or set aside the same.

In *Bunnell & Eno etc. Co. v. Curtis,* 5 Ida. 652, 51 Pac. 767, this court held that if a judgment were erroneous, the remedy of the defendants was by appeal or motion for a new trial and not by motion to set aside the judgment after the lapse of more than six months from the rendition of the judgment. (See, also, *Vane v. Jones,* 13 Ida. 21, 88 Pac. 1058.)

In the latter case, in referring to sec. 4229, Rev. Codes, the court said: "It seems from this section that the court may exercise its discretion to a limited extent in granting relief to an aggrieved party, and relieve him from a judgment taken against him under prescribed conditions, but there is no discretion or power in the court to lend its aid after the expiration of six months after the adjournment of the term." (See, also, *Holzeman & Co. v. Henneberry,* 11 Ida. 428, 83 Pac. 497, and *Hall v. Whittier,* 20 Ida. 120, 116 Pac. 1031.)

The probate court or the judge thereof did not have jurisdiction to grant said petition and open up or set aside its decree of distribution of the Corbett estate.

Then, under the facts of this case, did the said estate escheat to the state of Idaho under the provisions of sections 5715 and 5716, Rev. Codes? Said sections are as follows:

"Sec. 5715. Resident aliens may take in all cases by succession as citizens; and no person capable of succeeding under the provisions of this title is precluded from such succession by reason of the alienage of any relative; but no nonresident foreigner can take by succession, unless he appears and claims such succession within five years after the death of the decedent to whom he claims succession."

"Sec. 5716. When succession is not claimed as provided in the preceding section, the District Court, on information, must direct the Attorney General to reduce the property to his or the possession of the State, or to cause the same to be sold, and the same, or the proceeds thereof, to be deposited in the State Treasury for the benefit of such nonresident foreigner, or his legal representative, to be paid to him whenever, within five years after such deposit, proof, to the satisfaction of the State Auditor and Treasurer, is produced that he is entitled to succeed thereto."

It is contended under the provisions of said sections that since Bridget Madden was next of kin and entitled to succeed to the said estate, that if she neglected or failed to appear and claim said estate (which consisted of money and stock in a lumber corporation), it escheated to the state regardless of whether there were other heirs residing in the United States who would have been entitled to succeed to said estate provided Bridget Madden had not been alive at the date of the death of said deceased. In other words, it is contended that since Bridget Madden was the next of kin entitled to succeed to said estate, if she made no claim thereto, the other heirs of the deceased or next of kin after Bridget Madden could not succeed to said estate, but that it absolutely escheated to the state.

We cannot agree with that contention. It was not the intent of said provisions of the statute that the property of the deceased person should escheat to the state if he had any heirs who were entitled to succeed thereto. The fact that the nonresident heir failed to appear and claim title to the estate would not deprive the resident heirs who were next in succession from succeeding thereto. The clear intention of said escheat statute is that if there are no heirs entitled to succeed to said estate, then and in that case only does such estate escheat to the state, and when the statute declares that no person capable of succeeding under the provisions of said title is precluded from such succession by reason of the alienage of any relative, and that nonresident foreigners cannot take by succession unless they appear and claim such succession within

five years after the death of the decedent to whom he claims succession, it was not intended to preclude from succeeding to said estate the heir next in the line of succession to the nonresident foreigner who fails and refuses to make application to succeed to said estate.  The statute intended that the estate of a deceased person should escheat to the state only when there were no heirs whatever, resident or nonresident, to succeed to such estate.  A nonresident foreigner cannot by failure or neglect to make application to succeed to such estate deprive resident heirs of the right to succeed thereto.

Succession is the coming in of another to take the property of one who dies without disposing of it by will.  (Sec. 5700, Rev. Codes.)   Sec. 5701 provides that property, both real and personal, of one who dies without disposing of it by will passes to the heirs of the intestate subject to the control of the probate court, etc.   Sec. 5702 provides that "when any person, having title to any estate not otherwise limited by marriage contract, dies without disposing of the estate by will, it is succeeded to, and must be distributed unless otherwise expressly provided in this code, subject to the payment of his debts in the following manner."   Then follow nine subdivisions to said section, and the latter part of the eighth subdivision is as follows: "If there be no father nor mother, then such property shall go to the brothers and sisters of such deceased spouse, in equal shares, and to the lawful issue of any deceased brother or sister of such deceased spouse, by right of representation."   And subd. 9 is as follows: "If the decedent leave no husband, wife or kindred, and there be no heirs to take his estate, or any portion thereof, under subdivision eight of this section, the same shall be paid into the State Treasury for the support of common schools."

It is clear from the provisions of those subdivisions that the Connollys and Ellen Udell, being first cousins of Corbett and resident citizens of the United States, were heirs of said deceased and could succeed to his property provided there were no other parties who were entitled to succeed thereto by reason of closer relationship or kinship; and even if there be another heir of closer kinship and he failed to make claim thereto as

provided by law, those next in order of succession may come in and inherit the property. And the state comes in by way of succession or escheat only in the event of the absence of any heir who is entitled to such property by succession. When there are no heirs, then, and only then, does such property escheat to the state. (*In re Miner's Estate,* 143 Cal. 194, 76 Pac. 968.) This court held in *State v. Stevenson,* 6 Ida. 371, 55 Pac. 886, that in this country the general rule is that when the title to land fails for the want of heirs, it escheats to the state, and only then.

The cases of *In re Pendergast's Estate,* 143 Cal. 135, 76 Pac. 962, and *Lyons v. State,* 67 Cal. 380, 7 Pac. 763, are cited by respondent. In those cases the heirs referred to were nonresident foreigners and had not asserted their right to the property of the estates involved in those cases within the period prescribed by sec. 672 of the Civil Code of California, which section provides as follows: "If a nonresident alien take by succession, he must appear and claim the property within five years from the time of succession, or be barred," which section we do not have in this state. That section is an absolute prohibition upon the assertion of a claim by a foreigner to an estate in California not made within the statutory period mentioned in that section. In neither of those cases were there any resident heirs to said estates, and those cases have no application whatever to the facts in the case at bar. Under the facts in the case as shown by the record and under the law said estate never escheated to the state.

It must be remembered that the record herein discloses that both the state of Idaho and Bridget Madden at all times had due and legal notice of the administration of the Corbett estate by the probate court of Kootenai county, with Lawrence F. Connolly as administrator; that as early as May, 1910, Bridget Madden had actual notice of those proceedings, and that one of her attorneys, in her amended petition, verified by him, alleged her actual notice of the value of the Corbett property on the 9th day of April, 1911, which date was the day preceding the execution of her deed and bill of sale of all her interest in said estate to Lawrence F. Connolly. Thus it

appears that Bridget Madden had actual knowledge of the decree of distribution and of the value of said estate. She did not take any action in the probate court of Kootenai county until the 28th day of February, 1912,—about two years and six months after the date of said decree of distribution, and more than a year after she had actual knowledge of the distribution of said estate. If the contentions of the respondent's counsel in this case prevail, a decree of distribution of the probate court would never become final and would have no final, binding force and effect. Such uncertainty in decrees of probate courts was not intended by the legislature in the enactment of the probate laws of this state.

Other questions are raised that are not necessary for us to pass upon in the determination of this case, but it is clear that the probate court, or the judge thereof, was without jurisdiction in the matter here involved, and that the peremptory writ must issue prohibiting said judge or the court from proceeding further in said matter. Costs are awarded to the plaintiffs.

Ailshie, C. J., and Stewart, J., concur.