**ASHER et al. v. BONE et al.**

No. 8864.

Circuit Court of Appeals, Ninth Circuit.

Dec. 13, 1938.

316

HANEY, Circuit Judge, dissenting.

————◇————

Whitla & Knudson, of Coeur d'Alene, Idaho, for appellants.

Roy O. Samson, of Denver, Colo., and H. J. Hull, of Wallace, Idaho, for appellee Lulah J. Bone.

James A. Wayne, of Wallace, Idaho, for appellees H. E. Worstell, etc., Aetna Casualty & Surety Co., and Mineral Point Mining Co.

Before WILBUR, HANEY, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

This action was brought by appellee Lulah J. Bone, a citizen of the state of Illinois, hereinafter called the "complainant", against H. E. Worstell, executor of the estate of Stephen V. Osburn, a citizen of Idaho, the Aetna Casualty & Surety Company, a Connecticut corporation, the surety upon the executor's bond, and the Mineral Point Mining Company, an Idaho corporation.

In the complaint it was charged that Lulah J. Bone was deprived of a one-seventh interest in the residue of the estate of Stephen V. Osburn by what is claimed to be extrinsic fraud. The fraud claimed is that of procuring an erroneous decree of distribution of the property of said estate by causing an erroneous construction to be placed upon the terms of the will of Stephen V. Osburn by the probate court of Shoshone County, State of Idaho, sitting in probate in the matter of said estate, and the making of an undervaluation of the estate. The alleged fraudulent conduct was charged against the executor Worstell and Walter G. Asher who, it was alleged, had been appointed by "all or substantially all" of the heirs and legatees of Stephen V. Osburn except complainant, and Georgia Mullaney, Nell Osburn Schwarberg, William Osburn, Roy Osburn, Clarence Jack Osburn and Jackson Osburn, to represent them in all matters concerning the estate and to receive and receipt for their respective portions of the estate. It was alleged that the fraud charged against Asher was committed by him on behalf of the heirs and legatees he represented. Asher, not being within the jurisdiction of the court, was not made a party to this suit but on November 20, 1937, thirteen days before the trial, he and the other appellants herein intervened in the action.

On November 27, 1937, Georgia Mullaney, Nell Schwarberg, William Osburn, Roy Osburn and Clarence Jack Osburn, each having a small interest in the estate, also intervened and joined in the prayer of complainant that the executor Worstell be required to account for all property that came into his possession as executor and

that complainant be decreed the owner of an undivided one-seventh interest, less $1,-000, in the estate and that a trust for the benefit of complainant be impressed upon the property in whomsoever's possession it is.

During the pendency of the action, the complainant became incompetent and Mildred Pickrell was appointed her guardian ad litem and authorized to appear herein.

No fraud was charged against the Mineral Point Mining Company. It was joined as a defendant on the theory that making it a party vested the court with jurisdiction over certain capital stock of that company, which was part of the Stephen V. Osburn estate.

In his will Stephen V. Osburn made a specific bequest of $1,000 to his sister Farrinda P. Bone, who was the mother of the complainant. Farrinda P. Bone bequeathed to complainant all of her interest in the Stephen V. Osburn estate.

The residuary clause of the will of Stephen V. Osburn is as follows:

"Fifthly: I give and bequeath unto my brothers and sisters all the rest and residue of my estate, share and share alike; and in the event that any of my brothers or sisters shall have died before me, leaving lawful issue him or her surviving, the share of such deceased brother or sister shall be distributed among such issue, share and share alike, per stirpes and not per capita; provided, however, that the bequest of Farrinda P. Bone mentioned above shall be deducted from her share under the bequest named in this paragraph in the event that her share under this paragraph shall exceed the sum of one thousand dollars."

Complainant in this action seeks to avoid the effect of a decree of distribution of the probate court of Shoshone County, Idaho, which has become final. By the decree of that court the provisions of the will of Stephen V. Osburn were construed as bequeathing to Farrinda P. Bone $1,000 only, unless the remainder of the estate of Stephen V. Osburn was of such amount that the remaining brothers and sisters of the testator, or their heirs, would receive more than said sum ($1,000) each, and the probate court also determined by its decree that the value of the estate was such that the remaining brothers and sisters of the decedent, or their heirs, would not receive more than $1,000 each, consequently the residuum of the estate was distributed to the brothers and sisters, or their heirs, other than Farrinda P. Bone.

It does appear that the probate court's construction of the will was erroneous and it may be, as is claimed, that other errors also occurred in the probate proceedings that would have called for a reversal on a direct appeal. In view of the decree of the probate court the power of this court to declare a trust in the proceeds of the estate in the hands of the distributees named in the decree depends upon proof of extrinsic fraud in the procurement of that decree, and of such a diversity of citizenship as gives the court jurisdiction of the action. It is not for this court to determine that the probate court has erroneously interpreted the will of Stephen V. Osburn and for that reason to correct its error. The jurisdiction to determine the interest of respective claimants of an estate in Idaho is exclusively in the probate courts of that state having jurisdiction of the proceeding and the determination thereof by such probate court, whether right or wrong, is conclusive and subject only to be reversed, set aside or modified on appeal. Article 5, § 21, Constitution of Idaho; § 15-1307, Idaho Codes Annotated; § 15-1706, Idaho Codes Annotated; Miller v. Mitcham, 21 Idaho 741, 123 P. 941; Larsen v. Larsen, 44 Idaho 211, 256 P. 369.

A court of equity cannot invalidate or modify the probate court's decree of distribution. It can, however, declare that the fraudulent recipients of the property of the estate hold the proceeds in trust for those who have been defrauded by their extrinsic fraud.

At the outset it should be noted that the decree in this case is directed against intervener Walter G. Asher and the Mineral Point Mining Company, whose mine has been sold and whose assets are awaiting distribution to its stockholders. The decree declares that Walter G. Asher is holding the stocks, residue of the estate, in trust for complainant to the extent of a one-seventh interest therein, and orders the Mineral Point Mining Company to pay to complainant one-seventh of the portion of its distributive assets (less $1,000, the amount of specific bequest already paid to her) which have been or shall be allocated to the 355,138 shares of its capital stock owned by the estate of Stephen V. Osburn. The effect of the decree is to redistribute the estate of Stephen V. Osburn in accordance with what the trial court holds is the prop-

er interpretation of the will. It is clear, however, that jurisdiction obtained over the Mineral Point Mining Company, a corporation, did not give the district court jurisdiction to adjudicate the rights of the legatees to its capital stock owned by Stephen V. Osburn and distributed to them by the probate court of Idaho. Jellenik v. Huron Copper Min. Co., 177 U.S. 1, 20 S.Ct. 559, 44 L.Ed. 647; Tappan v. Merchants' Nat'l. Bank, 19 Wall. 490, 22 L.Ed. 189; Wells v. Price, 6 Idaho 490, 56 P. 266; State ex rel. Peterson v. Dunlap, 28 Idaho 784, 156 P. 1141, Ann.Cas.1918A, 546; 7 R.C.L. p. 196, § 166; 14 C.J. 387, § 510, p. 390, § 515. Although some of the legatees and heirs of Stephen V. Osburn became parties to this suit by intervention, it appears that other legatees have not been made parties and have not intervened. Others, who join with complainant, are, with the exception of Clarence Jack Osburn, of the same citizenship as complainant, being citizens of the state of Illinois. These latter heirs have no interest with complainant but set up no claim antagonistic to her. They concede her right to recover so far as they are concerned. But a decree against them places them on a side opposed to complainant and as to them (except Clarence Jack Osburn, as aforementioned) the suit must be dismissed for lack of jurisdiction. It also appears that appellant Mary Horner is a resident of Illinois. As to her the suit must be dismissed. Horn v. Lockhart, 17 Wall. 570, 21 L.Ed. 657; Smith v. Consumers' Cotton-Oil Co., 5 Cir., 86 F. 359; Seeley v. Cornell, 5 Cir., 74 F.2d 353; State of Washington v. United States, 9 Cir., 87 F.2d 421.

■ In regard to appellants' claim that all the legatees and distributees have not been made parties to the suit, complainant contends that the suit may be considered as a class suit, that the interest of the absent distributees has been fully presented and protected. It is clear that the proceeding in the case at bar in no sense purports to be a class suit and it was not prosecuted or defended as one. It cannot now be considered as one. McArthur v. Scott, 113 U. S. 340, 395, 5 S.Ct. 652, 28 L.Ed. 1015. Legatees not actual parties to the suit and not otherwise appearing cannot be bound by the decree. This fact alone would require reversal of the decree affecting them and the reframing of the decree to exclude them from its effect.

■ Appellants claim that all legatees are indispensable parties and that a failure to join them all requires a dismissal of the suit. We are of opinion, however, that although the legatees would be necessary parties—necessary in order to give complete relief—they are not indispensable parties in the sense that the cause could not proceed to judgment against those who are properly parties without them if a case of extrinsic fraud is made out. Each distributee who procured a portion of the complainant's property by fraud could be held as trustee to that extent.

■ Was there proof of extrinsic fraud sufficient to give this court equity jurisdiction to declare a trust against the estate in the hands of the distributees? In regard to the construction placed on the will by the probate court whereby it was decided that under the terms of the will complainant was entitled to only $1,000 if the estate was not sufficient to provide more than $1,000 each for the other brothers and sisters of decedent it is clear that there was no extrinsic fraud. The error was intrinsic. It is the duty of the court in probate matters to determine the rights of the legatees under the terms of the will. Whether or not an erroneous construction is placed upon the language of the will or whether there has been a mistake in construing the terms of the will are questions intrinsic to the proceedings and subject to review only by appeal. Art. 5, § 21, Const. of Idaho, supra; § 15-1706, Idaho Codes Annotated, supra; Miller v. Mitcham, 21 Idaho 741, 123 P. 941, supra. It is contended by complainant, however, that even if the construction placed on the will by the probate court of Idaho be binding she was still deprived by extrinsic fraud of her rightful share in the estate because the value of the residuum of the estate was in fact much greater than the value fixed by the decree of distribution and the actual value of the residuum was over $7,000 and was fraudulently concealed from complainant and from the probate court in order to procure the decree, excluding Farrinda P. Bone from participating in the residue of the estate. In support of this contention complainant relies upon the following evidence: The Osburn estate was originally appraised (September 17, 1919) at $10,860, which appraisal included 330,000 shares of the capital stock of the Mineral Point Mining Company appraised at 1 mill per share

($330). On May 15, 1928, the Mineral Point Mining Company entered into a written lease and option with one Fred Fudge covering certain partially developed but unproven lode mining claims owned by it. The agreement gave Fudge the right to work and prospect on the property covered thereby in consideration of his promise to conduct mining operations on the property and to pay a royalty on the net smelter returns of all ore extracted. Fudge was also given an option to purchase the properties for $75,000 if paid for on or before May 15, 1932, or for $100,000 if paid for on or before May 15, 1933. From the terms of the option and lease as above set out it is clear that said lease and option gave no assurance of any return from the properties covered thereby. However, on November 26, 1928, the executor filed in the probate court a petition for a reappraisal of the assets of the estate based on the discovery of additional assets (including additional shares of the Mineral Point Mining Company stock) and claimed increased value of the Mineral Point Mining Company stock due to development work on its property and by virtue of the Fudge lease and option. On the reappraisement, in light of these facts, the Mineral Point Mining Company stock was appraised at $17,082, and with duplications eliminated, the original appraisement and reappraisement showed a gross value for the estate of $27,862. On December 13, 1928, Walter G. Asher and certain heirs (Laura O. Nance, Lucy M. Ulyatt and Virginia Osburn) filed in the probate court objections to the inclusion in the final account of the Mineral Point Mining Company stock at any sum in excess of the original appraised value of the stock, claiming that the Mineral Point Mining Company stock was of no "commercial" value whatever. It was alleged that the reappraisal of the stock was asked for solely for the purpose of enhancing the amount of fees due the executor. Objections were also made to certain allowances of expenses claimed by the executor which included payment of assessments on the capital stock of the Mineral Point Mining Company. This disagreement was settled and pursuant to a stipulation between the executor, Asher, and the heirs and the legatees filing the above objections, the probate court made orders striking the reappraisement and approving the executor's account with certain modifications agreed to in the stipulation.

It will be noted in the summary of the proceedings above set forth, relied upon by complainant as establishing extrinsic fraud, that all the matters complained of were before the probate court for its consideration. The Fudge lease and option, the reappraisal, and the stipulation were all before that court. There is no evidence that the objections to the reappraisal were not bona fide. Complainant does not point out any other evidence of value which was known to the executor or to Asher and concealed from the court by them. The evidence does not establish extrinsic fraud practiced upon complainant or the probate court. There is no evidence of fraudulent conduct such as to prevent her from appearing in the probate proceeding to which she was a party. The documents relied upon by complainant to show extrinsic fraud were a matter of public record filed in the estate proceedings to which the public had access. The complainant is charged with knowledge thereof.

We conclude that there was no showing of extrinsic fraud sufficient to justify this court in declaring a trust in the property of the estate in the hands of the distributees.

The district court is directed to dismiss the suit as to intervening heirs and legatees who are citizens of the state of Illinois.

 Clarence Jack Osburn, who it appears is a resident of the state of California, and who intervened on behalf of complainant and thus subjected himself to the jurisdiction of the district court, took no appeal from the decree against him and the decree of the district court is binding on him in so far as it affects property distributed to him. In all other respects, the decree of the district court is reversed and that court is directed to enter a decree in favor of the defendants and remaining interveners. Costs to appellants.

Decree reversed.

HANEY, Circuit Judge.

I dissent.

It is clear that the Idaho probate court erroneously interpreted the fifth provision of decedent's will, and thereby deprived complainant of a part of the residuary estate. 1 Ida.Code, 1932, § 5-905, provides for relief from judgments as follows:

" * * * The court may * * * in its discretion, after notice to the adverse

party * * * relieve a party * * * from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect; and whenever, for any reason satisfactory to the court or the judge thereof, the party aggrieved has failed to apply for the relief sought during the term at which such judgment, order or proceeding complained of was taken, the court, or the judge thereof in vacation, may grant the relief upon application made within a reasonable time, not exceeding six months after the adjournment of the term. * * *"

Although this section is applicable to probate courts, which have no terms, application for relief must be made within 6 months from the time the order was made. Chandler v. Probate Court, 26 Idaho 173, 141 P. 635; Connolly v. Probate Court, 25 Idaho 35, 136 P. 205. Here, complainant does not seek relief under the statute.

In addition to the statutory remedy, it is held in Idaho that courts of equity have general jurisdiction to grant relief against probate proceedings for extrinsic fraud. Glover v. Brown, 32 Idaho 426, 184 P. 649; Swinehart v. Turner, 38 Idaho 602, 224 P. 74. In Arrowsmith v. Gleason, 129 U.S. 86, 9 S.Ct. 237, 32 L.Ed 630, it is held that the federal courts may give "relief according to the recognized rules of equity, as administered in the courts of the United States." [page 241.] Although the federal courts, prior to Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290, used their independent judgment in determining what "the recognized rules of equity" were, now, the local law is binding.

In Donovan v. Miller, 12 Idaho 600, 88 P. 82, 9 L.R.A.,N.S., 524, 10 Ann.Cas. 444, the court approves the following explanation of extrinsic fraud given in United States v. Throckmorton, 98 U.S. 61, 65, 25 L.Ed. 93:

" * * * In cases where by reason of something done by the successful party to a suit there was, in fact, no adversary trial or decision of the issue in the case, where the unsuccessful party has been prevented from exhibiting fully his case by fraud or deception practiced on him by his opponent, as keeping him away from court; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party or connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side—these and similar cases, which show that there has never been any real contest in the trial or hearing of the case, are reasons for which a motion for new suit may be sustained to set aside and annul the former judgment or decree and open the case for a new and a fair hearing." [page 84.]

The petition for distribution filed in the probate proceedings of decedent's estate contained the following allegation:

"That said decedent also bequeathed to Farrinda Bone the sum of $1,000 to be paid to her with the provision that if her interest in the estate should exceed said sum that she would then be entitled to her portion over and above said sum but that there are seven brothers and sisters, or the decedents of seven brothers and sisters and that the amount will not exceed $1,000 each. That the heirs of said Farrinda Bone would be entitled to receive said sum of $1,000 * * *".

It can be seen that insofar as Farrinda P. Bone was concerned, two issues are raised: (1) whether or not, by the will, she was entitled to a part of the residuary estate only in the event that the other residuary legatees received $1,000 each; and (2) whether or not the other residuary legatees would receive money and property valued at not more than $1,000 each.

The order of distribution contained the following with respect to Farrinda P. Bone:

"The court further finds that said sum [$1,000] was to be in full payment of the amount due her unless the remainder of said estate should amount to sufficient so that the remaining brothers and sisters of said decedent, or their heirs, would receive more, than said sum and the court finds that the value of said estate is such that the remaining brothers and sisters of said decedent or their heirs will not receive more than said $1,000 so that said sum is adjudged to the heirs of Farrinda Bone as their full share in said estate * * *".

It is apparent that by such order the probate court erred in fact and law. With respect to the first issue above mentioned it erred as a matter of law, because Farrinda P. Bone was entitled to a share of the residuary estate regardless of its value. If her share exceeded $1,000, then she was en-

titled to such share less $1,000; if such share was less than $1,000, she was entitled to the full share without deduction. With respect to the second issue, the probate court erred as a matter of fact in determining the value of the share to which the residuary legatees were entitled. Such value exceeded $1,000.

Nevertheless, the order is final, unless (1) the court was without jurisdiction to make it; or (2) it was obtained by extrinsic fraud. Appellees also contend that relief from the order might be granted for mistake on general principles of equity. We think that in Idaho relief cannot be granted against mistake as a general equitable rule. Donovan v. Miller, 12 Idaho 600, 88 P. 82, 9 L.R.A.,N.S., 524, 10 Ann. Cas. 444. Relief might be had under 1 Ida.Code, 1932, § 5-905, on the ground of Farrinda P. Bone's mistake, within "six months after the adjournment of the term", but that time has expired. There is no contention that such time was tolled by Farrinda P. Bone's absence from the state, if such were possible under 1 Ida.Code, 1932, § 5-229.

There is no contention that the order was void for want of jurisdiction. Therefore, relief may be granted only in the event that there was extrinsic fraud in obtaining the order. As said in Connolly v. Probate Court, 25 Idaho 35, 47, 136 P. 205, 209, "if through fraud or perjury an heir has been deprived of property, without any laches or fault on his part, he has the remedy in a court of equity". Here the successor of Farrinda P. Bone has been deprived of her share in the residue, and we are to determine whether such deprivation was had by extrinsic fraud. Therefore, the question for decision is whether or not the fact that there was no adversary trial or real contest over the two issues raised by the petition for distribution was caused by something done by the other interested parties to the proceeding. Such acts if viewed in the light of United States v. Throckmorton, supra, art: (1) Keeping Farrinda P. Bone, or her successor in interest from court; (2) where Farrinda P. Bone, or her successor, never had knowledge of the suit, and was kept in ignorance by the other parties. Appellees do not rely specifically on any of these points, but argue that fraud was practiced because the executor and the probate court did not "zealously guard and watch over the interest of every heir or devisee, whether in court or not." Appellants contend that the executor has no such duty, but must stand neutral, and that Farrinda P. Bone and her successor are charged with knowledge of all matters of record in the probate proceeding, and therefore must be held to have knowledge of the erroneous decision.

There is nothing in the record to show that Lulah J. Bone had actual notice of the increased value of the estate, and the trial court found she had none. Many letters were written by her, or on her behalf, but the few answers thereto did not disclose such matter. The finding should be sustained. Likewise, the theory of constructive notice cannot be used here. Goody v. Maryland Casualty Co., 53 Idaho 523, 528, 25 P.2d 1045; 26 C.J. 1155, § 70; and see Swinehart v. Turner, 38 Idaho 602, 224 P. 74.

The executor of Osburn's estate did not advise Lulah J. Bone of the increased value of the estate. Inasmuch as he was a fiduciary (Schneeberger v. Frazer, 36 Idaho 737, 748, 213 P. 568; State Insurance Fund v. Hunt, 52 Idaho 639, 645, 17 P.2d 354), he was under a duty to make full disclosure to the heirs, and upon his failure to do so, a court of equity will grant the injured heir relief. Smith v. Smith, D.C.Mont., 210 F. 947, 951, affirmed 9 Cir., 224 F. 1; 5 A.L.R. 672, Annotation. However, if the executor's duty was no more than to stand neutral, as appellants contend, he has not done so in this case. Divulging information to part only of the beneficiaries is not standing neutral between all of them. Here, because of information received by Lulah J. Bone as to the small value of the estate, she might well have believed that she would get no more than $1000 from the estate, even under a correct interpretation of the will, and might have reasonably concluded it would avail her nothing to appear and correct the error. The concealment of the increased value of the assets affords a substantial reason for her failure to correct the erroneous construction of the will. Had she known that she was entitled to receive about $7,000 more than she did receive, it is reasonable to assume that she would have asserted her rights.

I, therefore, disagree with the holding in the majority opinion that the "evidence does not establish extrinsic fraud practiced upon complainant or the probate court".

The judgment of the trial court should be affirmed.