(October 1, 1919.)

GEORGE R. GLOVER, Respondent, v. FRANK L. BROWN and ELLA BROWN, His Wife, CHARLES KRUEMPELBECK, E. F. STEINMAN, ANNA R. HOSKOT, THE NAMPA REALTY TRUSTEE COMPANY OF IDAHO, a Corporation, FRANK L. BROWN, EMIL R. SCHMITZ, F. A. HAGELIN, C. E. LORE and BURTON B. TUTTLE, as Trustees of Said THE NAMPA REALTY TRUSTEE COMPANY OF IDAHO, E. W. SITZER and ALENA SITZER, His Wife, Appellants.

[184 Pac. 649.]

HUSBAND AND WIFE—COMMUNITY PROPERTY—CONVEYANCE TO WIFE—VALIDITY OF — SEPARATE PROPERTY — PROBATE PROCEEDINGS—DESCENT AND DISTRIBUTION—DECREE OF DISTRIBUTION—VALIDITY OF—EFFECT ON TITLE—NATURAL GUARDIAN—DUTY TO PROTECT RIGHTS OF INFANT OFFSPRING—FRAUD—DIRECT ATTACK—EQUITY JURISDICTION—RELIEF—MISTAKE OF LAW—SUBROGATION—QUIETING TITLE.

1. The validity of a conveyance from husband to wife of the husband's interest in community property cannot be questioned by a third party, unless such party was a creditor of the husband before the conveyance was made or was a subsequent purchaser without notice.

2. Upon the death of respondent's mother, intestate, an undivided one-half interest in her separate property passed immediately to respondent under sec. 5702, Rev. Stats. of 1887, which was the succession law of this state at that time. The title to such interest vested in said heir at her death, subject only to proper administration.

3. The provision of sec. 5702, Rev. Stats. of 1887, that "it [the estate] . . . . must be distributed . . . . in equal shares to the surviving husband or wife and child . . . . ," is mandatory and makes it the imperative duty of the probate court to distribute the property in the manner and to the heirs therein specified. Any

On the question of effect of conveyance of community property by husband to wife, see note in 69 **L. R. A.** 378.

other attempted distribution of the property in question is in excess of the probate court's jurisdiction and void.

4. The validity of probate proceedings may be attacked upon the ground that such proceedings have worked a fraud, and a court of equity has jurisdiction to compel the restoration of lands or proceeds fraudulently acquired by such proceedings.

5. One claiming title to lands is chargeable with notice of every matter affecting the estate which appears on the face of any recorded deed forming an essential link in his chain of title, and also with notice of such matters as he might have learned by inquiry which the recitals in such instruments made it his duty to pursue.

6. A guardian sale of real estate is a judicial sale and the rule of *caveat emptor* applies.

7. *Held,* that appellants cannot raise the question of *bona fide* purchase upon this appeal, first, because they have made no assignment of error raising that question in this court, and, second, because the pleadings on their part do not properly raise the issue.

[As to community property acquired by gift, devise or descent, see note in 126 **Am. St.** 110.]

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. R. N. Dunn, Presiding Judge.

Action to quiet title and for partition. Judgment for plaintiff. *Affirmed.*

F. A. Hagelin and S. L. Tipton, for Appellants.

The probate courts have exclusive original jurisdiction in settlement of estates of deceased persons, and it is within the jurisdiction of those courts to determine who are the heirs of a deceased person and who is entitled to succeed to the estate and their respective shares and interest therein. The decrees of probate courts are conclusive in such matters. (*Miller v. Mitcham,* 21 Ida. 741, 123 Pac. 941; *Connolly v. Probate Court,* 25 Ida. 35, 45, 136 Pac. 205.)

The probate court made its final decree decreeing the property in controversy to be community property and that George S. Glover was the only heir; this decree is final and

conclusive and cannot be attacked in collateral proceeding, and can only be attacked in a direct proceeding by showing fraud or perjury in obtaining the decree. (*Connolly v. Probate Court, supra; Miller v. Mitcham, supra; Clark v. Rossier,* 10 Ida. 348, 3 Ann. Cas. 231, 78 Pac. 358; sec. 5627, Rev. Codes.)

Community property can be conveyed from husband to wife as a gift and the property conveyed can become the separate property of the wife, but this can only be done when there are no community debts or other debts of the husband. (*Bank of Orofino v. Wellman,* 26 Ida. 425, 143 Pac. 1169.)

George H. Rust, for Respondent.

"If through fraud or perjury an heir has been deprived of property without any laches or fault on his part, he has his remedy in a court of equity." (*Connolly v. Probate Court,* 25 Ida. 35, 136 Pac. 205; *Rhino v. Emery,* 72 Fed. 382, 18 C. C. A. 600; *Johnson v. Waters,* 111 U. S. 640, 4 Sup. Ct. 619, 28 L. ed. 547; *Griffith v. Godey,* 113 U. S. 89, 5 Sup. Ct. 383, 28 L. ed. 934, see, also, Rose's U. S. Notes; *Sohler v. Sohler,* 135 Cal. 323, 87 Am. St. 98, 67 Pac. 282.)

The defendants are bound by the fraud of their grantor, whether direct or remote. (15 Am. & Eng. Ency. of Law, 2d ed., 1200, and cases there cited.) Said probate decree was absolutely void. (Freeman on Judgments, secs. 116, 117.)

This is a direct attack on the probate decree, and not a collateral attack. (*Campbell etc. v. Campbell,* 152 Cal. 201, 92 Pac. 184.)

"In equity, gifts from husband to wife are recognized and protected, whether made with or without the intervention of a trustee, where they have been made in good faith and the rights of creditors are not infringed." (14 Am. & Eng. Ency. of Law, 2d ed., 1032, 1033, and cases n. 7; *Jones v. Clifton,* 101 U. S. 225, 25 L. ed. 908, 910; Story's Eq. Jur., sec. 1380; *Luhrs v. Hancock,* 181 U. S. 567, 21 Sup. Ct. 726,

45 L. ed. 1005; *Moore v. Page,* 111 U. S. 117, 4 Sup. Ct. 388, 28 L. ed. 373, see, also, Rose's U. S. Notes.)

"No third party can question the validity of a conveyance from the husband to the wife, unless he was a creditor of the husband before the conveyance was made, or was a subsequent purchaser without notice." (*De Garca v. Galvan,* 55 Tex. 53; *Lehmberg v. Biberstein,* 51 Tex. 457.)

Upon the death of Marietta Glover on June 16, 1905, all her separate property descended to and vested at once in all her heirs, under the provisions of sec. 5702, Rev. Statutes of 1887. (*Brenham v. Story,* 39 Cal. 179, 188; *Estate of Woodworth,* 31 Cal. 595, 604; *Gossage v. Crown Point Min. Co.,* 14 Nev. 153, 158; *Smith v. Olmstead,* 88 Cal. 582, 22 Am. St. 336, 26 Pac. 521, 12 L. R. A. 46, 48; *Raulet v. Northwestern Nat. Ins. Co.,* 157 Cal. 213, 107 Pac. 292, 297; *In re Campbell's Estate,* 149 Cal. 712, 87 Pac. 573, 575; *State v. Miller,* 149 Cal. 208, 85 Pac. 609; *In re Wickersham's Estate,* 7 Cal. Unrep. 70, 70 Pac. 1079; *Reed v. Stewart,* 12 Ida. 699, 87 Pac. 1002, 1152; *Wren v. Dixon,* 40 Nev. 170, Ann. Cas. 1918D, 1064, 161 Pac. 722, 167 Pac. 324.)

The title to the land vested in the heirs at decedent's death, subject only to such powers of administration as were then possessed by the court. (*In re Newlove's Estate,* 142 Cal. 377, 75 Pac. 1083.)

A final decree of distribution of a probate court does not create title in the heirs, but simply releases the title from certain conditions imposed by the statutes. (*Robinson v. Fair,* 128 U. S. 53, 9 Sup. Ct. 30, 32 L. ed. 415.) The heir takes subject to administration; with that limitation only, he holds precisely the title held by the ancestor. (*McCaughey v. Lyall,* 224 U. S. 558, 32 Sup. Ct. 602, 56 L. ed. 883; see, also, Rose's U. S. Notes.)

The heir obtains title by descent, and not through the process of the probate court. (*Lohmann v. Helmer,* 104 Fed. 178; *Binswanger v. Henninger,* 1 Alaska, 509.)

If the land was in fact community property, the probate court had no jurisdiction over it and all probate proceedings

were void so far as they purported to affect this land. (*In re Klumpke's Estate,* 167 Cal. 415, 139 Pac. 1062; *Finnerty v. Pennie,* 100 Cal. 404, 34 Pac. 869; *In re Burdick's Estate,* 5 Cal. Unrep. 6, 40 Pac. 35; *In re Brady's Estate,* 171 Cal. 1, 151 Pac. 275.)

The probate court does not have power to distribute property not belonging to the estate of the decedent. (*Douglas v. Douglas,* 22 Ida. 336, 337, 125 Pac. 796; *Miller v. Mitcham,* 21 Ida. 741, 123 Pac. 941.)

The third parties took their title with record notice that the land was separate property of the decedent, and of the fraud practiced by George S. Glover in procuring the decree. The present holders are in no sense innocent or *bona fide* purchasers without notice. (*Johnson v. Waters,* 111 U. S. 640, 4 Sup. Ct. 619, 28 L. ed. 547; *Arrowsmith v. Gleason,* 129 U. S. 86, 9 Sup. Ct. 237, 32 L. ed. 630; *McDaniel v. Traylor,* 196 U. S. 415, 25 Sup. Ct. 369, 49 L. ed. 533, see, also, Rose's U. S. Notes; *Campbell etc. v. Campbell,* 152 Cal. 201, 92 Pac. 184.)

"A purchaser with notice occupies no higher position than his vendor and takes the property subject to all outstanding rights or equities with notice of which he is chargeable." (23 Am. & Eng. Ency. of Law, 2d ed. 517, n. 11.)

Defendants bought the land and paid the purchase money under the belief that George S. Glover had the entire title to the land. This was a mistake of law, and defendants are therefore not entitled to equitable relief of any kind, and are not entitled to subrogation. (*Kleimann v. Geiselmann,* 114 Mo. 437, 35 Am. St. 761, 21 S. W. 796; *Deavitt v. Ring,* 76 Vt. 216, 56 Atl. 978; *Brown v. Rouse,* 125 Cal. 645, 58 Pac. 267; *Guy v. Du Uprey,* 16 Cal. 195, 196, 76 Am. Dec. 518; *Campbell v. Foster Home Assn.,* 163 Pa. St. 609, 43 Am. St. 818, 30 Atl. 222, 26 L. R. A. 117; *German Savings & Loan Soc. v. Tull,* 136 Fed. 1, 69 C. C. A. 1.)

BUDGE, J.—This action was brought by respondent to quiet title to an undivided one-half interest in certain property

in Canyon county, for partition thereof, and to have a de-
cree of distribution made and entered in the probate court
adjudged to be null and void.

The cause was tried to the court on the second amended
complaint and the answer thereto. Findings of fact and con-
clusions of law were made in accordance with the allegations
of the complaint, and judgment entered for respondent in
accordance with the prayer thereof. This appeal is from the
judgment.

The facts necessary to a determination of the points pre-
sented by appellant are that the property was originally,
and prior to June 22, 1896, the community property of
George S. Glover, the father, and Marietta Glover, the mother,
of respondent. On the latter date, George S. Glover deeded
the property to Marietta Glover. This deed was recorded
in Canyon county, July 16, 1896, and contained the following
recitals:

"That the said party of the first part, for and in consid-
eration of the love and affection which he bears towards his
wife, the said Marietta Glover, and for the purpose of mak-
ing her a gift, does hereby give, grant, alien and convey unto
his said wife, the said party of the second part, all that
certain property situate in Canyon County, Idaho, and de-
scribed as follows, to-wit: the SW. ¼ of sec. 34, T. 3 N., R. 2
W., B. M., Canyon County, Idaho, as the same appears of
record in the recorder's office of said county.

"To have and to hold the same unto the said party of
the second part, her heirs and assigns, for her sole and
separate use, benefit and behoof forever. To hold and enjoy
all and singular the same and every part and parcel thereof
as and for her separate estate, especially relinquishing for
himself and his heirs all right or claim to the same or any
part thereof as community property, so that the same may
be held by her as separate and not in any respect as com-
munity property."

Prior thereto, on January 6, 1896, Glover and his wife had
mortgaged the property to Prosper Aveline. This mortgage

was satisfied of record, January 29, 1903. On September 15, 1902, the property was again mortgaged to Prosper Aveline for $1,800. This mortgage was satisfied of record August 1, 1907. Before the satisfaction of the latter mortgage, Marietta Glover died, intestate, June 16, 1905. Letters of administration of her estate were granted to George S. Glover by the probate court of Ada county, July 19, 1905. The property was returned and appraised in the inventory as community property, and on February 1, 1907, the final decree of distribution of her estate purported to distribute as community property the entire property to George S. Glover, as the husband of the deceased Marietta Glover.

On August 1, 1907, George S. Glover, as a single man, mortgaged the property again to Prosper Aveline, for $5,000. The latter mortgage was foreclosed for nonpayment and a decree of foreclosure and order of sale was filed October 31, 1908. On December 15, 1908, W. H. Thorpe, as sheriff of Canyon county, executed a certificate of sale of the property to Prosper Aveline, subject to redemption in one year.

In September, 1908, George S. Glover was adjudged insane by the probate court of Ada county and committed to the care and custody of the Idaho Insane Asylum at Blackfoot, where he remained at all times thereafter until the date of his death, on November 30, 1913. One D. D. Williams was granted letters of guardianship of the estate of George S. Glover, October 2, 1908. Proceedings were had in the guardianship matter for the sale of the property, and on March 11, 1909, an order confirming the sale from D. D. Williams, as guardian, to T. W. Crane, was made, and pursuant thereto a guardian's deed was filed for record, April 1, 1909. On March 24, 1909, D. D. Williams, as guardian of the estate of George S. Glover, an insane person, paid to Prosper Aveline the sum of $5,898.83, in full payment of the judgment on foreclosure of the mortgage, and interest and costs, against the property and thereby redeemed the land from the foreclosure sale and sheriff's certificate thereof. All of the appellants derive their interests either mediately or

immediately through T. W. Crane, who purchased the property at the guardian sale.

It is apparent that at the time of his mother's death, respondent was not quite 15 years of age.

The main points sought to be made by appellants are that there is no finding that the property was the separate property of Marietta Glover, that the property was in fact community property and not her separate property, that there is no sufficient allegation in the complaint as to fraud, and that the decree of distribution awarding the property to George S. Glover can only be attacked on appeal therefrom.

As to the first point, the court found the facts above recited and found as a conclusion of law that the property "was the sole and separate property of Marietta Glover." It was eminently proper to so find as a conclusion of law, if the facts as found upon which the conclusion is based are adequate to support the legal inference that the property was her separate property. Appellants contend that community property can only be conveyed so as to become the separate property of the wife when there are no community or other debts of the husband, and rely upon the case of *Bank of Orofino v. Wellman*, 26 Ida. 425, 143 Pac. 1169. The most that can be deduced from the opinion in the latter case, however, is that such a conveyance is void as to existing creditors. The true rule is that "No third party can question the validity of a conveyance from the husband to the wife unless he was a creditor of the husband before the conveyance was made or was a subsequent purchaser without notice." (*De Garcia v. Galvan*, 55 Tex. 53; *Lehmberg v. Biberstein*, 51 Tex. 457.)

The deed to Marietta Glover manifests on its face a clear and unequivocal intention to convert the property into the separate property of Marietta Glover. This deed was recorded long prior to the time that Crane took title through the guardian, upon whose title as has been already observed, the rights of all of the appellants depend. No *existing* creditor is here complaining and the facts show that the

claims of all creditors in existence at the time the property was deeded to Marietta Glover were satisfied and the property redeemed.

It is clear, therefore, that the property was the separate property of Marietta Glover, and that the court properly so found.

The statute of succession in force at the time of the death of Marietta Glover, defining the manner in which such property should be distributed, was sec. 5702 of the Revised Statutes of 1887, the material portion of which reads as follows:

"Sec. 5702. When any person having title to any estate not otherwise limited by marriage contract, dies without disposing of the estate by will, it is succeeded to and must be distributed, unless otherwise expressly provided in this code, subject to the payment of his debts, in the following manner:

"1. If the decedent leave a surviving' husband or wife and only one child, or the lawful issue of one child, in equal shares to the surviving husband or wife and child, or issue of such child. . . . . "

Notwithstanding the fact that this property was separate property, it was caused to be returned by George S. Glover, as administrator of his wife's estate, as community property, inventoried, appraised and distributed as such. It is immaterial whether George S. Glover was acting with an honest intention and in the belief that the property was community property. The result of this proceeding worked a fraud upon this respondent. As was said by the supreme court of Washington:

"It may be conceded that there was no intention—and we think that is a fact—on the part of the attorneys, the probate judge, Tull, and the respondent to injure the appellants, and that they acted from the best of motives; but the fact stands out, nevertheless, that they perpetrated in law a fraud upon the children." (*Dormitzer v. German Savings & Loan Society,* 23 Wash. 132, 62 Pac. 862, at 891; judgment affirmed 192 U. S. 125, 24 Sup. Ct. 221, 48 L. ed. 373.)

The foregoing language is quoted with approval in *German Savings & Loan Society* v. *Tull,* 136 Fed. 1, 69 C. C. A. 1.

Upon the death of Marietta Glover, an undivided one-half interest in the property passed immediately to respondent as her son and heir. His title vested at her death, subject only to proper administration. (*In re Newlove's Estate,* 142 Cal. 377, 75 Pac. 1083; *McCaughey* v. *Lyall,* 224 U. S. 558, 32 Sup. Ct. 602, 56 L. ed. 883.)

The statute in force at the time vested the title, and a decree of distribution of the probate court neither gave a new title nor transferred any rights. (*Bates v. Howard,* 105 Cal. 173, 38 Pac. 715; *Robinson v. Fair,* 128 U. S. 53, 9 Sup. Ct. 30, 32 L. ed. 415, see, also, Rose's U. S. Notes; *Bainswanger v. Henninger,* 1 Alaska, 509; *Hume v. Laurel Hill Cemetery,* 142 Fed. 552; *Carter v. Frahm,* 31 S. D. 379, 141 N. W. 370.)

But entirely apart from the question of fraud and its effect upon the validity of the decree of the probate court, that decree possesses no validity, for if any force is to attach to the finding of the probate court that the property was the community property of George S. and Marietta Glover, then that court became *ipso facto* divested of any further jurisdiction to administer upon the property. If, on the other hand, the finding of the probate court that the property was community property is to be disregarded and treated merely as an error, then its decree, which gave the whole estate to George S. Glover, is void as to the interest of this respondent, a minor heir, because in excess of the jurisdiction of the probate court.

Let it be conceded that it is the office of the probate court to determine who are the heirs. This was done, and the probate court found that George S. Glover and this respondent were the heirs. The law of succession already referred to in existence at that time gave one-half of the estate immediately upon the death of Marietta Glover to respondent, then a minor, subject only, as previously observed, to proper administration, and the probate court had no jurisdiction to decree the entire estate to one heir and to leave the other

heir without estate, having found him to be such heir. The language of the statute is: " .... it [the estate] .... must be distributed .... in equal shares to the surviving husband or wife and child. ..... " The admonition expressed therein is not merely good advice, but is mandatory, leaves no discretion in the court, and makes it the imperative duty of the court to distribute the property in the manner and to the heirs therein specified and found by the court. Any different attempted distribution of the property would be in excess of the probate court's jurisdiction and void. The authorities cited by respondent upon this principle are conclusive. The principle, briefly summarized, may be stated thus: Even though a court has jurisdiction over the subject matter and the parties, if it proceeds to dispose of matters over which it is not authorized to act or to grant relief of a character which it has no power to grant, its judgment is in this respect void. (*Anthony v. Kasey,* 83 Va. 338, 5 Am. St. 277, at 278, 5 S. E. 176; *Furman v. Furman,* 153 N. Y. 309, 60 Am. St. 629, and note at pp. 643, 644, 147 N. E. 577; *Day v. Micou,* 18 Wall. 156, 21 L. ed. 861; *Ex parte Lange,* 18 Wall. 163, 21 L. ed. 872, see, also, Rose's U. S. Notes; *In re Klumpke's Estate,* 167 Cal. 415, 139 Pac. 1062; Freeman on Judgments, sec. 116, p. 176.)

With respect to void judgments, the latter author says:

"A void judgment is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained. It neither binds nor bars anyone. All acts performed under it and all claims flowing out of it are void. The parties attempting to enforce it may be responsible as trespassers. The purchaser at a sale by virtue of its authority finds himself without title and without redress. The first and most material inquiry in relation to a judgment or decree, then, is in relation to its validity. For if it be null no action on the part of the plaintiff, no inaction on the part of the defendant, no resulting equity in the hands of third persons, no power residing in any legislative or other department of the government, can invest it with any of the elements of

power or validity. It does not terminate or discontinue the action in which it is entered, nor merge the cause of action; and it, therefore, cannot prevent the plaintiff from proceeding to obtain a valid judgment upon the same cause, either in the action in which the void judgment was entered or in some other action.''

This proceeding is not a collateral attack on the judgment, but is a direct attack. (*Campbell v. Campbell*, 149 Cal. 712, 87 Pac. 573.)

The district court had jurisdiction under its general equity powers to entertain this action. As was said by this court:

"If through fraud or perjury an heir has been deprived of property without any laches or fault on his part, he has his remedy in a court of equity." (*Connolly v. Probate Court*, 25 Ida. 35, at p. 47, 136 Pac. 205.)

The validity of probate proceedings may be attacked for fraud and the jurisdiction of a court of equity to compel restoration of lands or proceeds fraudulently acquired by such proceedings is clear. (*Rhino v. Emery*, 72 Fed. 382, 18 C. C. A. 600; *Johnson v. Waters*, 111 U. S. 640, 4 Sup. Ct. 619, 28 L. ed. 547; *Arrowsmith v. Gleason*, 129 U. S. 36, 9 Sup. Ct. 237, 32 L. ed. 630; *McDaniel v. Traylor*, 196 U. S. 415, 25 Sup. Ct. 369, 49 L. ed. 533; *Griffith v. Godey*, 113 U. S. 89, 5 Sup. Ct. 383, 28 L. ed. 934, see, also, Rose's U. S. Notes.)

In the celebrated case of *Johnson v. Waters, supra,* the court used the following pertinent language:

"In a general sense it is true that the decisions of that court [probate] in the matter of the succession are conclusive and binding, especially upon those who are parties. But this is not universally true. The most solemn transactions and judgments, may, at the instance of the parties, be set aside or rendered inoperative for fraud. The fact of being a party does not estop a person from obtaining in a court of equity relief against fraud. It is generally parties that are the victims of fraud. The court of chancery is always open to hear complaints against it, whether committed *in pais* or by means of judicial proceedings. In such cases the court

does not act as a court of review, nor does it inquire into any irregularities or errors of proceeding in another court; but it will scrutinize the conduct of the parties, and if it finds that they have been guilty of fraud in obtaining a judgment or decree, it will deprive them of the benefit of it, and of any inequitable advantage which they have derived under it.''

. Another case much in point is *Sohler v. Sohler,* 135 Cal. 323, 87 Am. St. 98, 67 Pac. 282. The opinion in the latter case so clearly elucidates one of the main principles decisive of the present case that we feel constrained to quote therefrom at some length. The court said:

''The executrix of the estate was not alone the trustee of all of the heirs of the estate, and all of the parties in interest thereto and thereunder. She was the mother of these minor plaintiffs, had their actual custody and control, and, as their natural guardian, was chargeable with all the high duties pertaining to that relationship. As executrix, merely, it might be argued that she was a disinterested party, having no concern whatsoever in the question of heirship or right of distribution, standing indifferent between the parties, and interested only in carrying into effect the determination of the court upon these questions. But as the mother and natural guardian of these plaintiffs her position was a very different one. She was under most solemn obligation to protect the legal rights of her infant and dependent offspring. She was under like obligation to disclose to the court on their behalf, and in their interest, all knowledge which she possessed, and she was under the same obligation to see that their legal claims to the estate were properly presented before the court in probate; and with peculiar force did this duty press upon her, in view of the fact that during all of this time she was executrix of and administered upon the estate through which her children were to derive their property. Such being her position, it is charged that in violation of this duty, and of the rights of her minor children, she connived with her adult son, not an heir to the estate of the deceased, to procure for him a distributive portion of that estate, and that the conspiracy was carried to a successful termination. Here, cer-

tainly, is a charge of concealment upon the part of the guardian when she should have spoken in the interest of her wards, and collusion upon the part of the guardian with another not in interest in the estate, to the end that that other might despoil the wards of their rightful inheritance. It cannot to this be answered that the probate proceeding upon distribution was not an adversary proceeding. It becomes adversary in every case where there are conflicting claims, and where there be not the most perfect understanding and harmony between the claimants. The moment heirship was set up by the false claimant, Reuss, that moment between him and the rightful heirs an adversary proceeding was at issue, and from that moment it became the duty of the guardian of these minor heirs to see that the fullest presentation of their claims was put before the court. This, by conspiracy with her codefendant, it is asserted, she did not do; and it is clear that her fraud in pushing on behalf of Reuss his false claim to heirship and distribution, and in concealing the truth from her own minor children, the rightful heirs, and in leaving them in ignorance that they were thus to be deprived of their patrimony, was fraud extrinsic to the case, which prevented their being properly represented at the case, or from being represented at all.''

Of all of these matters, the purchaser at the guardian sale through whom these appellants seek to claim, upon the theory that they are *bona fide* purchasers, was as fully advised at the time he took the guardian's deed as were appellants at the time they purchased, for, as has been noticed, the deed from George S. Glover, which constituted this property the separate property of Marietta Glover, was and had for years been on record, before the guardian sale.

The general rule is fairly stated in 39 Cyc. 1713, that: ''One claiming title to lands is chargeable with notice of every matter affecting the estate which appears on the face of any deed forming an essential link in the chain of instruments through which he derives his title, and also with notice of whatever matters he would have learned by any inquiry which the recitals in those instruments made it his duty to pur-

sue. . . . . '' Citing numerous authorities from nearly every jurisdiction in the land. (2 Pomeroy's Equity Jurisprudence, 4th ed., sec. 655, p. 1296.)

A clear exposition of the principle involved will be found in *Dormitzer v. German Savings & Loan Society, supra.* The court, after discussing the principle, quoted the following statements of the rule from the authorities cited:

" 'Whatever is notice enough to excite the attention of a man of ordinary prudence and call for further inquiry is, in equity, notice of all facts to the knowledge of which an inquiry suggested by such notice and prosecuted with due and reasonable diligence would have led.' Kerr, Fraud & M. 236. 'It will not do for a purchaser to close his eyes to facts; facts which were open to his investigation by the exercise of that diligence which the law imposes. Such purchasers are not protected. . . . . No principle is better established than that a purchaser must look to every part of the title which is essential to its validity. . . . . When a purchaser cannot make out his title but through a deed which leads to a fact, he will be affected with notice of that fact.' *Brush v. Ware,* 15 Pet. 93, 10 L. ed. 672 [see, also, Rose's U. S. Notes].''

A guardian's sale of real estate is a judicial sale and the rule of *caveat emptor* applies. (*Black v. Walton,* 32 Ark. 321; *Gwynn v. McCauley,* 32 Ark. 97.)

There is no question of latent equity in this case. The facts which rendered the probate court's decree void were clearly expressed upon its face, independent of the fraud which in law had been practiced upon respondent.

Moreover, these appellants are in no position to urge the question of *bona fide* purchase upon this appeal; first, because they have made no assignment of error raising the question in this court; second, because the pleadings on their part do not properly raise the issue.

The rule is stated by Mr. Pomeroy as follows:

"The allegations of the plea, or of an answer so far as it relates to this defense, must include all those particulars which, as has been shown, are necessary to constitute a *bona fide* purchase. It should state the consideration, which must

appear from the averment to be 'valuable' within the meaning of the rules upon that subject, and should show that it has actually been paid, and not merely secured. *It should also deny notice in the fullest and clearest manner, and this denial is necessary, whether notice is charged in the complaint or not.*" (Italics ours.) (2 Pomeroy's Equity Jurisprudence, 4th ed., sec. 785, at 1606.)

The question of *bona fides,* therefore, is not presented upon this appeal.

Be that as it may, appellants' predecessors in interest had all the notice which the law is capable of giving them. It certainly cannot be argued that any duty rested upon this minor heir, who was without representation in fact and whose rights have been purportedly destroyed by the fraud of his natural guardian, to rush in to the guardian sale and by proclaiming his interests give actual notice in fact to Crane, the purchaser thereat. No such duty rests upon a minor. If the notice which Crane had is insufficient to defeat his claim that he is a *bona fide* purchaser, then there is no means known to the law by which the rights of this minor could have been protected, in view of the conduct of the probate court and his natural guardian. It would be a reproach upon the law and upon our form of jurisprudence to hold that a court of equity is impotent to afford a minor relief under such circumstances.

There is no merit in the contention of appellants that they are entitled to equitable relief by reason of the fact that money of their grantor, Crane, went to pay off the mortgage referred to herein under the belief that George S. Glover had the entire title to the land. They are not subrogated to the rights of the mortgagee. There was no mistake of fact. The only mistake was one of law, against which a court of equity will not grant relief. (*Kleimann v. Geiselmann,* 114 Mo. 437, 35 Am. St. 761, 21 S. W. 796; *German Savings & Loan Society v. Tull, supra;* 2 Jones on Mortgages, 6th ed., sec. 874f, p. 417; *Wadsworth v. Blake,* 43 Minn. 509, 45 N. W. 1131.)

The judgment is affirmed. Costs awarded to respondent.

MORGAN, C. J., Concurring.—While I concur in the conclusion reached in the foregoing opinion, I do so for reasons that are entirely foreign to those therein expressed.

At the time Marietta Glover died, and during the time an attempt was being made to probate her estate, Rev. Stats., sec. 5712, was in force and contained the following provision: "Upon the death of the wife, the entire community property, without administration, belongs to the surviving husband, . . . . "

The record before us discloses that the probate judge, in his decree of distribution, found the heirs to the estate of Marietta Glover to be her husband and her son; also that the land, title to which is here in litigation, was community property, which he thereupon assumed to distribute to the husband.

It is clear the land in question was the separate property of the decedent and that the probate court had jurisdiction of it. It is also clear that tribunal did not have jurisdiction of the community property because it did not belong to the wife's estate but, upon her death, belonged, without administration, to the husband. That court, having found the land to be community property, did not, in purporting to make distribution of it, deal with the estate of the wife, but assumed to distribute to the husband property which already belonged to him, not because he inherited it, but because he owned it. This was beyond the jurisdiction of the court and that portion of the decree is a nullity.

"In addition to jurisdiction of the parties and the subject matter, it is necessary to the validity of a judgment that the court should have jurisdiction of the question which its judgment assumes to decide, or of the particular remedy or relief which it assumes to grant, . . . . " (23 Cyc. 684; *Munday v. Vail*, 34 N. J. L. 418; *Waldron v. Harvey*, 54 W. Va. 608, 46 S. E. 603; *Standard Savings & Loan Assn. v. Anthony Wholesale Grocery Co.* (Okl.), 162 Pac. 451, L. R. A. 1917D, 1029; *Sharp v. Sharp* (Okl.), 166 Pac. 175.) " 'Jurisdiction of the subject matter' means, not only authority to hear

and determine a particular class of actions, but authority to hear and determine the particular questions the court assumes to decide.'' (*Sache v. Gillette et al.*, 101 Minn. 169, 118 Am. St. 612, 11 Ann. Cas. 348, 112 N. W. 386, 11 L. R. A., N. S., 803.)

It was beyond the jurisdiction of the probate court to distribute community property to the surviving husband because it was not a part of the deceased wife's estate. Although it had jurisdiction to do so, that court did not distribute to him the separate property of his wife; it failed to find she had separate property. That which it attempted it was without jurisdiction to do; that which it had jurisdiction to do it did not attempt.

The decree did not confer title upon George S. Glover and it is not available to appellants in support of their contention that they are innocent purchasers and encumbrancers. A prospective purchaser of this land from Glover, or his guardian, would discover, upon examination of the record, that it had been distributed to him by the probate court as community property of himself and his wife. Such a purchaser, being presumed to have knowledge of the provision of sec. 5712, *supra,* would know the decree was a nullity; that it could neither add to nor detract from the title Glover had, and would be put upon his inquiry as to the nature and condition of that title, which inquiry would disclose all its infirmities.

I dissent from that portion of the opinion which holds a decree of a probate court distributing property other than as directed by statute to be in excess of its jurisdiction and void; also from that portion which holds this action to be a direct, and not a collateral, attack upon the judgment (*O'Neill v. Potvin,* 13 Ida. 721, 93 Pac. 20, 257); and from that portion which announces that ''the validity of probate proceedings may be attacked for fraud and the jurisdiction of a court of equity to compel restoration of lands or proceeds fraudulently acquired by such proceedings is clear,'' unless that rule is limited by a statement to the effect that decrees of probate courts in probate matters are subject to

attack in like manner and to like extent only as are judgments and decrees of other courts of record in matters within their jurisdiction.

RICE, J., Dissenting.—The property involved in this action was the separate property of Marietta Glover at the time of her death. From the stipulation of facts filed in this case we must assume that the probate court acquired jurisdiction of her estate. Under Rev. Statutes, sec. 5702, subd. 1, her surviving husband, George S. Glover, and her minor son, George R. Glover, plaintiff below, were entitled to succeed to this property in equal shares. Such proceedings were had in the administration of her estate in the probate court that a decree of distribution was entered, reciting that the property was community property and distributing the whole thereof to the surviving husband, George S. Glover. No appeal was taken from this decree of distribution.

It is true that it is not the office of a decree of distribution by the probate court to create titles, or to transfer rights. (*In re Newlove's Estate,* 142 Cal. 377, 75 Pac. 1083; *Bates v. Howard,* 105 Cal. 173, 38 Pac. 715; *Gossage v. Crown Point M. Co.,* 14 Nev. 153; *Chever v. Ching Hong Poy,* 82 Cal. 68, 22 Pac. 1081.) But it is the office of a decree of distribution to determine who the heirs are to whom the estate has descended, in the absence of a testamentary disposition thereof, and apportion the parts to which each heir is entitled. In Idaho a decree of distribution applies to personal property and real estate alike. (See *Toland v. Earl,* 129 Cal. 148, 79 Am. St. 100, 61 Pac. 914.)

Involved in every decree of distribution in the matter of any estate of which the probate court has jurisdiction, and which has not been disposed of by will, is the determination of the question as to who are the heirs of the intestate, and the further question of the parts or proportions of the estate to which each heir is entitled. (*Miller v. Mitcham,* 21 Ida. 741, 123 Pac. 141; *Connolly v. Probate Court,* 25 Ida. 35, 136 Pac. 205; *Crew v. Pratt,* 119 Cal. 139, 51 Pac. 38; *Cunha v. Hughes,* 122 Cal. 111, 68 Am. St. 27, 54 Pac. 535; *St. Mary's*

*Hospital v. Perry,* 152 Cal. 338, 92 Pac. 864; *In re Burdick's Estate,* 112 Cal. 387, 44 Pac. 734.)

If the property in fact had been community property, under Rev. Statutes in force at the time this administration was had, the probate court would have had no jurisdiction of the estate. (*In re Rowland's Estate,* 74 Cal. 523, 5 Am. St. 464, 16 Pac. 315; *In re Young's Estate,* 123 Cal. 337, 55 Pac. 1011; *In re Klumpke's Estate,* 167 Cal. 415, 139 Pac. 1062.)

The claim advanced by the husband that the property was community property and belonged to him, not as heir but as owner, is a claim adverse to the estate and presents a question of which the probate court had no jurisdiction. (*In re Klumpke's Estate, supra; In re Rowland's Estate, supra.*) The probate court, under our statute, is not required to make and file findings of fact as a basis for its decree of distribution. If the probate court in this case was attempting to pass upon the adverse claim of the surviving husband that the property was community property and therefore belonged to him as owner without administration, its action in so finding was beyond its jurisdiction and void.

I think the mere fact that the court found, by way of recital, that the property involved in this action was community property would not have the effect of divesting the court of jurisdiction of the estate. Notwithstanding such finding, it was the court's duty to proceed and make a decree of distribution, a duty which, in case of refusal, it might have been compelled to perform by writ of mandate. It did not dismiss the probate proceedings, but did make and enter its decree of distribution.

That the court was intending to decree a distribution of the estate of Marietta Glover, deceased, and was not setting over the estate to George S. Glover, the surviving husband, because as community property it belonged to him without administration, I think is patent on the face of the decree itself. The decree contains the following:

"George S. Glover, the administrator of the estate of Marietta Glover, deceased, having on the 21st day of January,

1907, filed in the court his petition, setting forth, among other matters, that all accounts have been finally settled . . . . , and that a portion of said estate remains to be divided among the heirs of said deceased; . . . . said matter coming on regularly to be heard this 1st day of February, 1907, . . . . and it appearing to the satisfaction of this court that the residue of said estate, consisting of the property hereinafter particularly described, is now ready for distribution . . . . ; that the said estate is community property; that the said Marietta Glover died intestate in the County of Los Angeles, State of California, on June 16, 1907, [1905] and his [her] only heirs at law are George S. Glover, husband, and Raymond Glover, son . . . . . That the said George S. Glover, as the husband of the said Marietta Glover, is entitled to all the residue of said estate . . . . .

"It is hereby ordered, adjudged and decreed that the residue of said estate of Marietta Glover, deceased, hereinafter particularly described, and now remaining in the hands of said administrator, and any other property not now known or discovered, which may belong to said estate, or in which the said estate may have an interest be and the same is hereby distributed as follows, to-wit: [to] George S. Glover . . . . ." (Then follows a particular description of the property involved in this action.)

Failure to mention an heir, or distribution to one not an heir, or erroneously determining the proportions or parts of the estate to which the heirs are entitled, does not render the decree void. (*Sohler v. Sohler*, 135 Cal. 323, 87 Am. St. 98, 67 Pac. 282; *Mulcahey v. Dow*, 131 Cal. 73, 63 Pac. 158.) To so hold would be to deny power in the court to commit error. To hold a decree of distribution, awarding to one heir that portion of an estate which by the statute of succession belongs to another heir, void *pro tanto* because in excess of the jurisdiction of the probate court, would result in unsettling the probate titles of the state. It would lead to the evil which the law was designed to remedy. I think, therefore, that the decree of distribution in this case was erroneous, but not void.

No appeal having been taken, it became final and conclusive. (C. L., sec. 5627; *Miller v. Mitcham, supra; Connolly v. Probate Court, supra; Wm. Hill Co. v. Lawler,* 116 Cal. 359, 48 Pac. 323; *Crew v. Pratt, supra; Goad v. Montgomery,* 119 Cal. 552, 63 Am. St. 145, 51 Pac. 681; *In re Trescony,* 119 Cal. 568, 51 Pac. 951; *Cuhna v. Hughes, supra; Jewell v. Pierce,* 120 Cal. 79, 52 Pac. 132; *In re Miner's Estate,* 143 Cal. 194, 76 Pac. 968; *St. Mary's Hospital v. Perry, supra; In re Kennedy's Estate,* 129 Cal. 384, 62 Pac. 64; *In re Burdick's Estate, supra; Chever v. Ching Hong Poy, supra.*)

The decree of distribution, being a proceeding *in rem,* was binding upon the minor heir. (*Mulcahey v. Dow, supra; Connolly v. Probate Court, supra.*)

Decrees of probate courts in probate matters, however, are subject to attack in equity to the same extent as decrees or judgments of other courts in other actions. (*Bacon v. Bacon,* 150 Cal. 477, 89 Pac. 317.)

The second cause of action in the complaint alleges fraud in the procurement of the decree of distribution, and the complaint contains a prayer for general relief.

Respondent in this case should have been granted any relief to which he was entitled under the allegations of his complaint, and the proof produced at the trial. (*Dormitzer v. German Savings & Loan Soc.,* 23 Wash. 132, 62 Pac. 862.) His allegations and proof of fraud were sufficient within the rules laid down in the cases of *Sohler v. Sohler, supra,* and *Diamond v. Connolly,* 251 Fed. 234, 163 C. C. A. 390.

Under the constitution and statutes of this state, probate courts are granted exclusive original jurisdiction in the matter of the settlement of estates. (*Connolly v. Probate Court, supra; Idaho Trust Co. v. Miller,* 16 Ida. 308, 102 Pac. 360.) The district court, therefore, could not have set aside the decree of the probate court and substitute such a decree as would have been proper in its judgment; neither is it within the province of the district court, unless the matter reaches it on appeal, to direct the probate court as to what decree it shall make. (*Toland v. Earl, supra.*)

Doubtless, in proper cases where those interested in the estate can be made parties to the action, a decree of distribution may be set aside in equity for fraud. In such cases the estate reverts to the probate court to complete the administration. (*In re McFarland's Estate,* 10 Mont. 586, 27 Pac. 389.) But in this case, the surviving husband died long prior to the institution of the action. Appellants, defendants below, had derived title through the father, George S. Glover. Respondent was not entitled to have the decree set aside so as to divest appellants of their title or cast a cloud thereon, if they were *bona fide* purchasers of the property. It may be conceded that at the time the guardian's deed was given, the property was impressed with a constructive trust, that is, that George S. Glover held an undivided one-half of the property as trustee for his minor son. (*Diamond v. Connolly, supra; Sohler v. Sohler, supra; Estate of Hudson,* 63 Cal. 454.) A guardian's sale of real estate is a judicial sale, and the rule of *caveat emptor* applies. (*Black v. Walton,* 32 Ark. 321; *Bachelor v. Korb,* 58 Neb. 122, 76 Am. St. 70, 78 N. W. 485; *Leuders v. Thomas,* 35 Fla. 518, 48 Am. St. 255, 17 So. 633.) But a purchaser in good faith of trust property at a judicial sale thereof is not affected by the trust, and takes the property freed therefrom, unless he had notice of the trust at the time of the purchase. (17 Cyc. 1302; 39 Cyc. 562.)

Respondent alleged in his complaint that the appellants took their title with notice of his equities, and that they were not *bona fide* purchasers, which allegations appellants denied. In their answer, they did not affirmatively allege that they were *bona fide* purchasers. The court found that the defendants, appellants here, purchased their title to the land described with notice of the rights and interests of respondent. Appellants do not specify as error in their brief that the evidence was insufficient to support this finding, although they argue that appellants were *bona fide* purchasers for value.

It is apparent from the record, however, that the question of the *bona fides* of appellants was considered in the trial of

the case below. Since the evidence consisted principally of a stipulation of facts, and no question of credibility of witnesses is involved, and this court has before it for consideration all that the trial court had on this feature of the case, I think we should consider the question of the *bona fides* of appellants, even in the absence of a direct specification of error as to the insufficiency of the evidence, and even though the burden of alleging and proving that appellants were *bona fide* purchasers rested with them. (*Ewald v. Hufton,* 31 Ida. 373, 173 Pac. 247; *Johansen v. Looney,* 31 Ida. 754, 176 Pac. 778.)

There is nothing whatever in the record upon which the finding that the appellants took with notice can be based, except the fact that the deed of gift from the husband to the wife was duly recorded. But between the time of the recording of that deed and the guardian's sale, the probate court had distributed the property to the surviving husband. A decree of distribution of the probate court is entitled to all the presumptions in its favor which are applicable to a decree of a court of general jurisdiction. In the absence of any proof of notice, extrinsic to that contained in the records in the office of the county recorder, it seems to me to be manifest that a purchaser would have a right to rely upon the subsequent decree.

I am of the opinion that the judgment should be reversed and the cause remanded to the district court for a new trial.