(March 3, 1923.)

## CELIA SCHNEEBERGER, Admx., Appellant, v. R. S. FRAZER, Administrator, Respondent.

[213 Pac. 568.]

ESTATE OF DECEASED PERSONS—CLAIMS AGAINST—PAYMENT—ADMINIS-
    TRATORS—CONTINUATION OF BUSINESS OF DECEASED.

   1.  An administrator or executor has no authority to pay claims against the estate of which he has charge except when they are presented within the time and in the manner required by law. If he pays in disregard of the requirements of the law he may be required to make good to the estate all sums so illegally paid out.

   2.  An administrator is not required to continue the business of the deceased. If he does so he assumes responsibility for all losses incurred and must account for any profits so earned.

   3.  An administrator or executor should be held to the duty of guarding with the utmost fidelity the interests of the heirs of the estate in his hands.

---

Publisher's Note.

   2.  Personal liability of executor or administrator for carrying on business of deceased without authority, see note in **Ann. Cas.** 1912B, 728.

   Power to carry on business in behalf of estate and liability thereunder, see note in 40 **L. R. A., N. S.,** 205, 234.

      36 Idaho.—47

APPEAL from the District Court of the Fourth Judicial District, for Jerome County. Hon. H. F. Ensign, Judge.

Action protesting account of administrator of estate. From judgment for defendant, plaintiff appeals. *Reversed,* with directions to district court to enter judgment in behalf of appellant.

Bissell & Bird and W. T. Stafford, for Appellant.

An administrator has no authority to pay a claim against the estate until such claim has been approved and allowed by the probate court. (C. S., secs. 7584, 7713; *Walton v. Channel,* 34 Ida. 532, 204 Pac. 661.)

A claim presented against an estate after the expiration of the statutory period therefor is a nullity and can be given no legal effect. (*Lundy v. Lemp,* 32 Ida. 162, 179 Pac. 738; *First Sec. & Loan Co. v. Englehart,* 107 Wash. 86, 181 Pac. 13.)

The probate court and administrator have no jurisdiction or power to allow or pay a claim against an estate if such claim is over $20 and not accompanied by the statutory affidavit. (C. S., secs. 7582, 7701; *Worley v. Hineman* (Ind. App.), 29 N. E. 570; *McWhorter v. Donald,* 39 Miss. 779, 80 Am. Dec. 97; *Clancey v. Clancey,* 7 N. M. 405, 37 Pac. 1105; *Dillabough v. Brady,* 115 Wash. 76, 196 Pac. 627; *Ullman Company v. Adler,* 59 Mont. 232, 196 Pac. 157; *Langrell v. Wright,* 2 Boyce (Del.), 311, 80 Atl. 235; *Carpenter & Co. v. Naftel,* 203 Ala. 487, 83 So. 471; *Harding v. Ballard,* 172 Ky. 416, 189 S. W. 242.)

An administrator who procures his appointment by the waiver of those with prior rights thereto, which waiver is obtained by the admitted agreement of the administrator not to charge an administrator's fee, cannot charge such fee. (*In re Sullivan's Estate,* 36 Wash. 217, 78 Pac. 945; C. S., sec. 7487.)

Walters, Parry & Bailey and Paul S. Haddock, for Respondent.

Our statutes provide for certain technical procedure in regard to the filing and allowance of claims against an estate which refer exclusively to the claims of and against the deceased and the closing up of the estate business. Said laws, however, do not apply to the accounts which grow out of continuing to conduct the business left by the deceased. (2 Church's Probate Law and Practice, 2d ed., pp. 1513–1515; *In re Rose's Estate,* 80 Cal. 166, 22 Pac. 86.)

DUNN, J.—This case grows out of an attempt to settle up in the probate court of Jerome county the estate of Joseph Schneeberger, deceased, who died February 4, 1913.

Respondent was appointed administrator of said estate and in response to a citation of the probate court requiring him to show cause why he should not submit his final account as administrator he filed, on February 17, 1917, what appears to be his final account. Appellant, who had been appointed administratrix to succeed respondent, filed a protest against a large number of the items embraced in said account and respondent filed his answer thereto, in which he alleged that all of the matters contained in said protest relative to said estate had theretofore been determined by decree of the probate court settling the account of said administrator filed on December 11, 1914, and by the settlement of a subsequent account filed April 1, 1916; that each and all of the other objections raised by the said appellant refer to transactions which were no part of the administration of said estate by respondent, and that in addition to his duties as administrator of the said estate "he did during the latter part of the year 1914 and during the years 1915, 16 and 17, conduct the business of the said Jos. Schneeberger, deceased, and that each and all of the items received by him and each and all of the items paid out by him have been duly submitted to the court in the above-entitled action, and that by reason of his conducting said business the property of said estate has

---

Opinion of the Court—Dunn, J.

---

been greatly enhanced in value and that there has been no loss, either by reason of his actions as administrator of said estate or by reason of his action and management of the business affairs of the property of the said Jos. Schneeberger, deceased.'' He prayed that said protest be dismissed and that his reports stand approved.

Hearing was had before the probate court with the result that said probate court refused to approve said final account and entered an order and decree that respondent had paid out $7,387.72 without authority of law; that he had illegally retained certain commissions as administrator and had not accounted for certain other sums of money belonging to said estate, all of which he was required to repay to said estate. From this decree and order of the probate court respondent appealed to the district court where the matter was tried anew and judgment rendered in favor of the respondent, from which judgment appellant has brought the case here on appeal.

The assignments of error all go to the improper allowance of claims against the estate.

It is somewhat difficult, if not impossible, on this record to reconcile the contentions and the acts of respondent with reference to his accounts as administrator. It seems inconsistent for the respondent to file the account that he did file in response to the citation and at the same time deny that it is his final account as administrator and deny the jurisdiction of the probate court to consider said account and finally pass upon it. Yet that is the position he takes. He says in his brief:

''If the heirs feel that the administrator has failed to honestly account to the estate for the profits made or if he fails to make good the losses they may proceed against him in a civil action as in any other case of fraud and in such an action each of the items and all of his accounts of the business which he conducted can be probed and examined but such an investigation cannot be made in this kind of an action. Therefore neither the probate court nor the

appellate courts to which the action is appealed can audit or inquire into any of such accounts."

We are not prepared to accept this declaration of respondent as sound law. However we may regard the jurisdiction of the probate court to pass upon this report filed February 17, 1917, we think there can be no question that when respondent took the matter by appeal to the district court and tried it out there, he was then in a court with jurisdiction to settle all the questions that could be raised with regard to that account, whether it be regarded as a final account of the administration of respondent or an account of his transactions as manager of the business of the deceased. If resort were had to an independent action on behalf of the heirs it could be brought in the district court, so that when respondent took the controversy there by appeal he submitted it to a court that had jurisdiction of the subject matter. Both parties went to trial without objection. They were in court for all purposes involved in the controversy, and it makes no difference how they got there. (*School Dist. No. 94 v. Gautier,* 13 Okl. 194, 73 Pac. 954.)

The transactions of the administrator presented to the district court and brought here for review are in a most unsatisfactory condition. If the matter had not been pending so long and there were reasonable hope that a re-examination of it in the district court might bring more satisfactory results we would send the case back for retrial, but in view of the fact that it is ten years since the administration began, and that to send it back for retrial would probably prolong the litigation for one or more years, we shall attempt to dispose of it on the record presented to us, believing that substantial justice can thus be done and further delay avoided.

On December 11, 1914, respondent filed with the probate court of Lincoln county his first report as administrator. (Subsequently Jerome county was created and the probate proceedings transferred to that county.) On the same day that this report was filed the probate court, without notice, entered an order approving the same. We find in the record

no other formal report until that of February 17, 1917, although there are between these two reports some informal statements of receipts and expenditures filed by the administrator. If we understand respondent's contention correctly, he desires to have the first report regarded as a final report of his administration and this last report considered merely as a statement of his transactions in the management of the business of Joseph Schneeberger, deceased. If this is his position we think it cannot be sustained, for there are some claims shown by the first report to have been paid by the administrator which clearly are not proper charges against the estate, while there are numerous items in the last report that would have been legal charges against the estate if they had been properly verified and filed in time.

The administrator has paid a large number of claims purporting to be against said estate upon presentation of a simple statement of account, unsupported by the affidavit required by the law of this state, which is as follows:

"C. S., sec. 7582. Every claim which is due, when presented to the executor or administrator, must be supported by the affidavit of the claimant, or someone in his behalf, that the amount is justly due, that no payments have been made thereon which are not credited, and that there are no offsets to the same, to the knowledge of the affiant. If the claim be not due when presented, or be contingent, the particulars of such claim must be stated. When the affidavit is made by a person other than the claimant, he must set forth in the affidavit the reason why it is not made by the claimant. The oath may be taken before any officer authorized to administer oaths. The executor or administrator may also require satisfactory vouchers or proofs to be produced in support of the claim. If the estate be insolvent no greater rate of interest shall be allowed upon any claim after the first publication of notice to creditors than is allowed on judgments obtained in the district court."

Many of these claims in addition to lacking this statutory affidavit are wholly without proof in the record of the trial in the district court. In the course of the examination of

the administrator with regard to a long list of claims nothing, with but few exceptions, was drawn from him in support of said claims, except that he had paid them. The simple statement of the administrator that he had paid a certain claim cannot be accepted as meeting the requirements of the law that it must be shown that a claim is justly due, that no payments have been made thereon which are not credited and that there are no offsets, and yet this sort of evidence, if it can be so called, is all there is to support the following claims: O. Z. Burkhead, $185.70; O. Z. Burkhead, $30.95; Thos. Jaycox & Son, $31.20; Lincoln County National Bank, $30.80; C. W. & M. Co., $1,080.50; J. A. Armstrong, $79.98; J. A. Armstrong, $49.76; J. A. Armstrong, $44.57; Jerome Blacksmith Shop, $20.20; J. A. Armstrong, $31.27; J. A. Armstrong, $99.28; Frazer-Moore Co., $98.30; Barnett Still-well, $50; R. S. Frazer, $25; Lincoln County National Bank, $23.33; C. M. Robinson, $32.81; J. A. Armstrong, $40.90; J. A. Armstrong. $27.51; J. A. Armstrong, $89.27; Lincoln County National Bank, $20; W. A. Heiss, $50; Lincoln County National Bank, $157.50; J. C. Martin, attorney's fee, $519.39; J. C. Martin, attorney's fee, $250; total, $3,068.22.

As to the last three payments it is to be said that they were made without even the filing of a claim, either sworn or unsworn, so far as the record shows.

The administrator has also paid the following claims which were properly verified but presented after the expiration of the time for filing claims against the estate: John F. Schmershal, $43.05; Jerome Blacksmith Shop, $23.06; Jerome Drug Co., $34.40; C. F. Borden, $2.10; Statesman Printing Co., $6.58; total, $109.19.

C. S., sec. 7581, reads as follows:

"Sec. 7581. All claims arising upon contracts, whether the same be due, not due or contingent, must be presented within the time limited in the notice, and any claim not so presented is barred forever; *Provided,* that when it is made to appear by the affidavit of the claimant, to the satisfaction of the court or a judge thereof, that the claimant had no notice as provided in this chapter by reason of being

out of the state, it may be presented at any time before a decree of distribution is entered.''

The first publication of the notice to creditors was February 27, 1913. · Therefore the last day for presenting claims against the estate was December 27, 1913, and all of the last-mentioned claims were presented after the time had expired. Their payment was therefore wholly without authority, none of them falling within the exception mentioned in the statute.

He has also paid the following claims which were not only unverified but filed after the time had expired for presenting claims: Joe Schloegel, $3.55; Schloegel & Brown, $4.20; total, $7.75.

These claims, both verified and unverified, appear to be of such character as to have entitled them to be allowed as proper charges against the estate if they had been presented within the time and in the manner provided by law. Since the administrator embraced in his last report these claims as well as many that were not properly charged against the estate, and since he includes in the last report a statement of the funds in his hands belonging to the estate we find it difficult to conclude that he did not in fact intend this to be his final report. But, whatever may have been his intention in that regard, the fact remains that he did embrace all these matters in the report which he submitted to the probate court, and we can find no ground upon which he could legally object to that court's considering and acting upon said report.

Respondent concedes, and this view seems to be supported by some of the authorities cited by him, that if, in the conduct of the business of the estate, the administrator made a profit such profit would belong to the estate and he would be required to account therefor as administrator. If this be true, then how can it be said that a detailed report of his transactions as such manager would not be subject to examination by the probate court? If the probate court in such a situation has no authority to make an inquiry into such transactions, then it would be forced to accept the con-

clusions of the administrator that his profits amounted to only so much, or that he had incurred no losses in his management of the business. In this case the administrator claims that his conduct of the business of the deceased resulted in a profit to the estate, but we fail to find in his report any satisfactory evidence of such profit. On the other hand, it is not clear from the report that his so-called management of the business resulted in loss to the estate. The only profit that is shown to have resulted to the estate from delaying the final settlement thereof came from an increase in the value of the land, for which the administrator is in no sense entitled to credit. His final report shows a balance in his hands amounting to $782.23, and the district court found "that the cash on hand as shown by the said final report is correct."

The following unverified claims were paid by respondent as administrator of said estate. Jerome Blacksmith Shop (Jos. Kersey), $4.09; Northside News, $1.40; G. M. Robinson, $32.81; G. M. Robinson, $11.04; R. S. Fuertado, $15.50; Thos. Jaycox, $6.55; Baker & Jensen (cutting grain), $11.25; Northside W. House & Commission Co., $5.10; Daly-Trounsen Co., $5.00; H. C. Jensen (baling 1914), $13.70; Frazer-Moore Co., $3.65; Roman Ziegler, $10; repairs on engine, $.50; I. G. Finch, labor for Claypool, $10; express on repairs for engine, $.50; C. W. & M. Co., repairs, $2.41; A. W. Arps, repairing, $.60; Barnett Stillwell, $50; Daly-Trounsen, $11.60; John McJunkin, $11.50; Frazer-Moore Co., $5.85; R. E. Shawver (no voucher, no statement as to what claim is for), $18.20; total $231.25.

Respondent's contention is that these were incurred in the conduct of the business and were not required to be supported by the statutory affidavit of the claimant, but if this contention is correct, we think it would not justify the conclusion that when these payments have been challenged he could have them allowed by the court without supporting them by any testimony whatever as to their validity. And yet they are here without a word of evidence to establish the fact that they were incurred in the conduct of the busi-

ness or that they are claims entitled to be paid by him either in his capacity as administrator or as manager of the business of the deceased. Their allowance by the district court cannot be upheld.

The record shows the probate court made an allowance of $50 a month for the support of the heirs and that no direct payment thereof was made by the administrator. His claim is that he made this payment by arranging for the guardian and the heirs to purchase such supplies as were needed, and that from time to time he paid the bills so contracted. Without regard to the question whether this could be held as a substantial compliance with the probate court's order if a proper accounting were made by the administrator, it is sufficient to say that in nearly every instance the bills so presented to the administrator and which he paid were merely statements of account unsupported by any evidence whatever on the part of the claimant, and in the trial of the case no evidence whatever appears to sustain the validity of these claims except the testimony of the administrator that he paid them. This showing is insufficient to entitle him to credit for such payments as a compliance with the order of the probate court.

The record also shows that respondent came into possession of $999 of life insurance which was no part of the estate of the deceased. He claims that this fund was applied to payment of "bills of the estate," but the record fails to disclose the character of the "bills," or whether they were such as he had authority to pay.

Appellant asks that judgment be rendered in her behalf for this insurance money on the ground that it was no part of the estate and that the administrator had no right to receive it. Her claim that the fund was no part of the estate and that it should not have gone into the hands of the administrator is well founded, but this contention would also defeat her right to recover it in this action for the reason that she is suing as administratrix and if the administrator had no right to receive it because it was not

a part of the estate she equally is not entitled to recover it in this action for the same reason.

The record justifies the conclusion that respondent was appointed administrator of this estate at his solicitation. His own testimony shows that he promised the guardian and the heirs as an inducement to his appointment that if he were appointed administrator he would make no charge for his personal services. In direct violation of this promise he attempted to withhold $400 of money belonging to the heirs as compensation for such services. No citation of authority is required to convince us that such a claim can have no standing either in law or in equity. Respondent's counsel attempt to justify this violation of his solemn promise by respondent on the ground that the heirs have put him to considerable expense by questioning the legality of his acts as administrator. He cannot be so justified, especially in view of a record which shows abundant reason to raise such question.

The relation existing between an executor or an administrator and the heirs of a deceased person, especially when such heirs are minors bereft of both father and mother, as in this case, constitutes a trust of the most sacred character, and such officer should be held to the duty of performing his trust with the utmost fidelity. Probate courts, which have jurisdiction of such matters in the first instance and are charged by law with supervision of the settlement of estates of deceased persons, can do much to insure honest and capable handling of such estates if they insist, as they should in every case, that such officers shall be held to the strictest compliance with the laws governing their official transactions.

There are other claims appearing in the record which may be fairly questioned, but we have given the administrator the benefit of the doubt except in those cases where it is perfectly clear that his payment of the claims has been wholly without authority of law. Applying this rule, it clearly appears from the foregoing that the district court erred in rendering judgment in behalf of respondent. The

judgment is therefore reversed and the district court directed to enter judgment in behalf of appellant for $4,598.64, the aggregate of the claims enumerated above, which have been illegally paid by respondent, and the cash balance in the hands of respondent, together with interest on said sum of $4,598.64 at the rate of seven per cent per annum from and after the 7th day of September, 1920. Costs awarded to appellant.

McCarthy, J., concurs.

Budge, C. J., concurs in the conclusion reached.