IN RE RINIO'S ESTATE. RINIO, APPELLANT, v. KESTER, ADMINISTRATOR, RESPONDENT.

(No. 6,968.)

(Submitted January 5, 1933. Decided February 14, 1933.)

[19 Pac. (2d) 322.]

430

*Messrs. Murch & Wuerthner,* for Appellant, submitted an original and a supplemental brief; *Mr. Julius J. Wuerthner* argued the cause orally.

*Mr. W. L. Bullock* and *Mr. D. W. Doyle,* for Respondent, submitted a brief; *Mr. Doyle* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Gottlieb B. Rinio and Hans Kristofferson were copartners under the firm name and style of People's Meat Market, engaged in the wholesale and retail meat business at Valier, Montana, when on December 2, 1929, they died, counsel say, simultaneously.

On December 2 the district court of Pondera county, upon the application of W. L. Bullock, an attorney at law residing at Valier, appointed C. H. Kester special administrator of the estates of the deceased partners. Mr. Bullock has acted as counsel for Mr. Kester throughout the entire proceeding. Kester qualified on December 4, 1929. The letters issued to him in the Rinio estate recited merely that "C. H. Kester of Valier, Montana, is hereby appointed special administrator of the estate of G. B. Rinio, deceased."

On December 9, 1929, Frederick Rinio, brother of Gottlieb, deceased, signed a petition asking for the appointment of Kester as general administrator of the Rinio estate; Rinio signed this petition upon the recommendation of Mr. Bullock, but he would not have signed it had he known that he himself had the legal right to be appointed. No inference is to be drawn against Mr. Bullock with respect to this transaction; he undoubtedly thought he was acting for the best interests of the estate, and he also thought that Mr. Rinio was

not a competent person to act as administrator. This petition was filed on December 11, 1929, and on December 24 the court made an order appointing Kester administrator. He took the oath of office on January 8, 1930, but letters of administration were not issued to him until March 11, 1930. Concurrently, it seems, similar steps were taken in the Kristofferson estate.

Kester was president of the First National Bank of Valier, and is a business man of long experience.

The situation was difficult. District Judge Hattersley, Mr. Bullock, and Mr. Kester thought it the part of wisdom to continue the business of the People's Meat Company, which was then a going concern and the only meat market in the town of Valier. It was foreseen that, unless the business was continued, another meat market would be established (a threatened contingency), in which event the property of the People's Meat Market would deteriorate greatly in value, causing heavy loss to both estates.

At once, upon his appointment as special administrator, Kester began to carry on the business. When he took charge, the partnership property consisted of real estate and a large amount of personal property—90 head of cattle, 75 head of sheep, 50 hogs, 50 turkeys, 400 chickens, 20 hides, between 80 and 100 tons of hay, between 50 and 70 tons of barley and wheat, screenings, machinery, trucks, and tools, and a considerable stock of groceries. On December 12, 1929, he filed a petition for and obtained an order in the Rinio estate permitting him to sell as depreciating personal property ''hogs and cattle in which the deceased owned an interest at the time of his death.'' (See secs. 10111, 10200, Rev. Codes 1921.)

Kester carried on as if the business were his private affair. Through employees he sold meat and other merchandise upon credit as well as for cash, purchased supplies necessary for continuing the business, and paid debts of the concern, some of which were in existence when the partners died. He fed the hay and grain to the livestock, some of which he sold, and to other livestock which he bought. While he sold cattle

and hogs at different times at private sale, after the order of sale of December 12 was signed, no return of sales was ever made, although section 10247, Revised Codes of 1921, required him to make return thereof within thirty days. Moreover, the law required him to sell the cattle and hogs at public auction, after ten days' notice, in the absence of authority—which he did not possess—to sell the same at private sale or upon shorter notice. Although in contemplation of section 10111, supra, the function of a special administrator is to collect and preserve the estate of the decedent only until an executor or administrator is appointed, Kester, as special administrator of the two estates, carried on the business of the People's Meat Company until he qualified as administrator in March, 1930.

On April 5, 1930, he filed an account and report of his doings as special administrator of the Rinio estate, and asked to be discharged as such. Exhibit A attached thereto has this heading: "Report of C. H. Kester, as special administrator of the Estates of Hans Kristofferson and G. B. Rinio. (Covering his conducting of the business of the People's Meat Co.)" In this report he disclosed to the court that at the time he was appointed special administrator, there was cash on hand amounting to $670.27, and that he had received $13,130.57 from the sale of cattle, hogs, sheep, chickens, hides and merchandise. He had collected also $669.70 from "accounts receivable." He had paid out $8,087.30, of which $5,587.30 was for livestock, and $487.41 for merchandise purchased. The rest was for carrying on the business; except $101.36 in payment of old accounts. He then had on hand 30 cattle, 50 hogs, 31 sheep, 10 hides, and a quantity of merchandise.

The account was approved, and an order made discharging him as special administrator. He continued to carry on the business of the People's Meat Company until September 15, 1930, when he sold the same to Frederick Rinio. He testified that the business as conducted by him had yielded a profit.

In the meantime he sold without authority an automobile belonging to the Rinio estate, but did not make any return of the sale. He published notice to creditors, commencing with March 13, in which he notified them to present their claims to him within ten months after the first publication of the notice; but he did not render to the court a full account and report of his administration within thirty days after the expiration of the time mentioned in the notice to creditors within which claims must be exhibited, as required by section 10294, Revised Codes of 1921. In fact he did not render any such account at any time. "Every account must exhibit all debts which have been presented and allowed during the period embraced in the account." (Sec. 10294.)

The record shows that the bank account of the Rinio estate was usually overdrawn, although the People's Meat Company account had an average balance approximating $6,500, throughout the year 1930, running well into the year 1931. No effort was made to pay creditors' claims in general; payments, without authority of the court, were made upon a few. He never did make to the court a statement of claims presented to him, designating the names of the creditors, the nature of each claim, when it became due or would become due, and whether it was allowed or rejected by him. (See sec. 10193, Revised Codes 1921.)

During his operation of the People's Meat Company, Kester extended credit to customers to the extent of $1,500, and it appears that $500 of this is not collectible. He did not make an examination of the books to ascertain the condition of the accounts as between the partners; he did not know whether one estate was indebted to the other.

We agree that it was wise to avoid closing the business of the meat company; but this should have been a temporary affair. Immediate steps should have been taken to dispose of the property and goodwill of the People's Meat Company. Mr. Kester did not possess legal authority at any time to carry on the business. We think he proceeded in accordance with his best judgment and in the exercise of good

faith. He seems to have believed that his course had the approval of the district judge, and, seemingly, Mr. Bullock entertained a like opinion. In the anomalous situation in which they found themselves, it was necessary to act, and they acted. Mr. Bullock consulted with the district judge; but the extent to which that officer advised him is not ascertainable from the record. It does not appear that the judge gave any written authority for the procedure which was followed, and from his testimony it appears that he did not have any definite information as to the progress of affairs. District judges are consulted frequently by counsel and by administrators and executors respecting the conduct of estates, and by wise admonition are often able to direct the proper course to be followed. But advice, gratuitous or otherwise, is not binding, unless grounded upon the statutes, or, in the absence of statute, upon recognized legal principles.

Being dissatisfied with Kester's management of the estate and because the administration was not brought to a close, Rinio, on June 26, 1931, filed a petition in behalf of himself and two sisters, whose attorney-in-fact he was, the three being all of the heirs at law of Rinio, deceased, praying for an order directing Kester, as administrator of the estate, to show cause why his letters of administration should not be revoked. It was alleged that the interests of the estates of Rinio and Kristofferson were in conflict with one another, and that Kester could not fairly and impartially, nor even legally, administer the two. It was charged that the Rinio estate had been mismanaged, neglected and wasted; also that the partnership affairs had never been liquidated or settled, and that an account thereof would disclose a credit moving to and in favor of the Rinio estate from the Kristofferson estate.

Acting on this petition, Judge Hattersley suspended the powers of the administrator of the Rinio estate and ordered that a citation be issued to him to appear and show cause why his letters of administration should not be revoked, requiring him to render an exhibit under oath showing the amount

of money received and expended by him, the amount of all claims presented against the estate, and allowed by him, and other matters necessary to show the condition of its affairs. Some six weeks later the administrator filed his answer to the petition, and also his exhibit under oath. Objections were filed thereto by the petitioner. Thereafter, on September 16, 1931, the cause came on for hearing before the Honorable F. E. Stranahan, judge of the twelfth judicial district. On the day of the hearing Frederick Rinio nominated his son William Rinio, of Valier, Montana, for appointment by the court as administrator of the Rinio estate. After hearing, the court refused to revoke Kester's letters, "as none of the irregularities alleged against the said administrator are of sufficient gravity to warrant the revocation."

Judge Stranahan was impressed with the good faith of Messrs. Kester and Bullock in their efforts to handle a difficult, and, indeed, an anomalous problem. But the learned judge did not give sufficient consideration to other and more important elements of the situation. The law does not look with favor upon the administration of estates by a person where conflicts in the performance of his duty are likely to arise. Section 10068, Revised Codes 1921, provides, in part, that "if the decedent was a member of a partnership at the time of his decease, the surviving partner must in no case be appointed administrator of the estate." The reason for prohibiting the appointment of the decedent's surviving partner as administrator is that the surviving partner is entitled to continue and wind up the partnership affairs, and must account to the administrator. (*Mares* v. *Mares*, 60 Mont. 36, 199 Pac. 267.) It must be obvious that if he were himself administrator a serious conflict of interests at times could not be avoided. (See Bancroft's Probate Practice, 427; *Stapley* v. *Stapley*, 29 Ariz. 487, 242 Pac. 1005.)

Mr. Lindley observes: "It is not unusual for one person to make a co-partner his executor; but the difficulty of the executor's position is thus rather increased than diminished; for his own personal interest as a surviving partner is brought

into direct conflict with his duty as executor. Everything, therefore, which he does is liable to question and misconstruction on the part of the person beneficially entitled to the estate of the deceased; and he is practically much more fettered in the discharge of his duties and in the exercise of his right than if he had not to act in the double character imposed upon him." (Lindley on Partnerships, 2d Am. ed., 1313 et seq.; and see *In re Dolenty's Estate*, 53 Mont. 33, 161 Pac. 524.)

Here we find one person acting at the same time in three capacities: exercising a power akin to that of a surviving partner, and carrying on the administration of the estates of the two men who composed the partnership. To this situation the reasons against the service of a surviving partner as administrator of his deceased partner's estate apply with special force. The time was sure to come when, to say the least, it would be difficult, if not practically impossible, for Mr. Kester to discharge with impartiality his assumed function of carrying on the partnership business, and his duties as administrator of the two estates.

The statute provides that when an administrator is incompetent to act, he must be removed. (Sec. 10124, Rev. Codes 1921.) We think that after Kester had been carrying on the business of the People's Meat Company, during which endeavor he had subjected himself to possible personal liability, and during which period he had not sought to ascertain the rights of the estates in the partnership property, nor had he attempted to close up the estates, he had put himself into a position where, as a legal proposition, he was incompetent to act, regardless of his good intentions.

But it is urged that Frederick Rinio, because he requested Kester's appointment, is estopped from asking his removal; even if this were true, it does not follow as to the other two heirs, who did not request the appointment. (Compare *In re Blackburn's Estate*, 48 Mont. 179, 137 Pac. 381.)

Little attention was paid to controlling statutes during the progress of the administration. We have hitherto

pointed out the necessity of obeying statutory commands where persons have in charge the sacred trust of administering the estates of the dead. (*In re Jennings' Estate*, 74 Mont. 449, 241 Pac. 648.) Diligence and careful attention must be given to all essential details in the matter of the settlement of estates of deceased persons, and the court should hold administrators to the strictest compliance with the law governing their official transactions. (*Schneeberger* v. *Frazer*, 36 Idaho, 737, 213 Pac. 568.) As was said in *Re Holladay's Estate*, 18 Or. 168, 22 Pac. 750, 752: "Under our probate system the duties of an executor or administrator are active, and not passive. He cannot be permitted to neglect to do those things which are plainly required at his hands by law or the order of the court, and, when complaint is made of such neglect, excuse himself by alleging that such delay or omission was for the benefit of the estate."

We do not intend to say that administrators should be removed merely because they have failed to make reports within the time prescribed by statute, provided it is made to appear that no harm has come to the estate or those interested therein because of the delay, but the court should insist upon compliance with the statutes. (See *In re Connolly's Estate*, 73 Mont. 35, 235 Pac. 408.) The court in the exercise of its discretion could have removed Mr. Kester as administrator of the Rinio estate, because of his failure to comply with plain statutory requirements, without any reflection upon his integrity or good faith, or could have done so upon the ground of conflicting interests which in legal effect rendered him incompetent to serve. Instead, the court permitted the condition then shown to continue, and, in so doing, erred.

But it is urged by counsel for the respondent that the question sought to be presented by the appellant is moot, by reason of the fact that, since the perfection of the appeal in this cause the district court of Pondera county, Honorable W. H. Meigs presiding, appointed W. B. Finlay, of Great Falls, as trustee of the partnership assets, and therefore the objection to Kester's acting "as trustee" has been removed.

A certified copy of an order made on February 19, 1932, showing the appointment of Mr. Finlay has been presented. Therein Mr. Kester is referred to as a voluntary trustee. It is also stated that certain items in the Rinio estate amounting to the sum of $1,881.30 are claimed "to belong to the settling of the partnership account," and that "before the administrator in either case can be advised as to the assets due said estate from the partnership of the deceased partners, an audit of the books of the partnership will have to be made"; that some part of the partnership property has not been disposed of, the extent thereof being to the court unknown, and that it is necessary to appoint a trustee to dispose of, account for, and wind up the partnership affairs. One of the duties of Mr. Finlay, specified in the order, is to audit the books of the partnership "heretofore kept by the deceased partners and by C. H. Kester since his action as voluntary trustee in the conducting of the affairs of said partnership." A further recitation is "that the books of the deceased partners as kept by C. H. Kester may not reflect the various items therein on the books sufficiently to inform the trustee and auditor as to their full meaning," and Mr. Kester is directed to submit the books as kept by him and by the deceased partners to the trustee and to make a report or submit an account to the trustee of his acts "as voluntary trustee of the People's Meat Company, * * * and not reflected by the books heretofore kept by the partnership and by him as voluntary trustee."

If any further evidence were required to show the necessity of a change in the situation as it appeared upon the hearing, the order of Judge Meigs supplies it.

All the conditions considered, it was the duty of Judge Stranahan to have removed Mr. Kester as administrator of the Rinio estate, and to have appointed some competent person in his stead.

The order of the district court of Pondera county denying the petition of Frederick Rinio for the revocation of the letters of administration upon the estate of G. B. Rinio, de-

ceased, is reversed, and the district court is ordered to appoint some competent person administrator thereof.

The costs of the appeal shall be defrayed out of the funds of the Rinio estate.

ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS, STEWART and ANDERSON concur.